

**BANCORPSOUTH BANK**

**Master Promissory Note**

MAKER(S): VAN BUREN GROUP LLC

LOAN #: _____3811

DATE: SEPTEMBER 05, 2001

AMOUNT: $ 5,400,000.00

FOR VALUE RECEIVED, the Obligors (which term is used throughout this note and which shall include the undersigned maker(s) together with all endorser(s), surety (sureties), co-maker(s), and guarantor(s) of this note), jointly and severally, promise to pay to the order of BancorpSouth Bank, Tupelo, MS doing business in Mississippi as BANCORPSOUTH BANK   negotiable and payable at Bank's office in 1501 LAKELAND DR, JACKSON, MS 39216

(herein called "Bank"), its successors and assigns, in current funds the principal sum of: FIVE MILLION FOUR HUNDRED THOUSAND DOLLARS AND 00 CENTS

($ 5,400,000.00 ) Dollars, together with interest, calculated on the basis of a *(check appropriate provision)* [ X ] 360 day year, [   ] 365 day year, on the principal debt evidenced hereby from *(check appropriate provision)* [   ] _____ to maturity, [   ] date to maturity, [ X ] date(s) of the disbursement of the proceeds hereof to maturity, and payable as hereinafter set forth. This note shall mature, and said principal debt, and interest thereon, shall be due and payable as provided in the sub-paragraph(s) as follows *(check appropriate provision):*

**As To PRINCIPAL Only:**

[ X ] On SEPTEMBER 05, 2003 _____ ; or
[   ] In _____ installments of $ _____ each, commencing on _____
and on the same day of each and every [   ] month, [   ] quarter, [   ] six (6) months, or [   ] year thereafter, plus a final installment of the balance of the principal and interest thereon on _____
[   ] Other *(Specify)* _____

**As To INTEREST Only:**

[ X ] On JANUARY 30, 2002 _____ , and on the same day of each and every [   ] month, [   ] quarter,
[ X ] six (6) months, or [   ] year thereafter; or
[   ] Paid in advance to maturity by discount of the principal; or
[   ] At maturity.
[   ] Other *(Specify)* _____

**As To JOINT Principal and Interest:**

[   ] In _____ installments of $ _____ each, commencing on _____
and on the same day of each and every [   ] month, [   ] quarter, [   ] six (6) months, or [   ] year thereafter, plus a final installment of the balance of the principal and interest thereon on _____
[   ] On _____
Said payment(s) shall be applied first to the payment of interest at the per annum rate provided hereinbelow and any amount remaining after payment of said interest shall be applied in reduction of the unpaid principal of the note.
[   ] Other *(Specify)* _____

**The RATE of Interest:**

[ X ] 6.500 % per annum.
[ X ] The above rate may change as provided below.
A variable rate of interest per annum equal to _____ ; the following rate:
[   ] BancorpSouth Prime Rate; [ X ] WSJ Prime Rate; [   ] The Index rate listed below.
Said BancorpSouth Prime Rate being that rate of interest as periodically determined by BancorpSouth Bank, One Mississippi Plaza, Tupelo, Mississippi, and said WSJ Prime Rate being the base rate on corporate loans at large United States money center commercial banks as published in The Wall Street Journal. In the event that more than one national Prime Rate is published, the higher of the published rates will apply.
Said Index Rate is as follows: _____
Effect of Variable Rate Change: [ X ] The amount of each payment will change; [   ] The final payment will change.
The said interest rate is not necessarily the best interest rate which the bank may, from time to time, offer or contract or charge to Obligor(s) or other borrowers on any other loans or class of loans.
[   ] Other *(Specify)* _____
Said rate of interest is to be adjusted if and as provided hereinbelow.

**Effective Date of Rate ADJUSTMENT:**

[ X ] The same day that the rate of interest as set out above changes during the term of this note.
[   ] On the monthly anniversary date following a change in the rate of interest as set out above during the term of this note.
[   ] On the quarterly anniversary date following a change in the rate of interest as set out above during the term of this note.
[   ] Other _____

Provided, however, that the rate of interest under this note shall not be adjusted below a minimum of N/A % nor above a maximum of N/A % except that in no event shall the rate of interest under this note exceed the maximum amount permitted by applicable law for a bank chartered under the laws of the State of Mississippi . In the event that the interest rate indicated herein and/or the interest payments made hereunder shall be in excess of the maximum amount permitted by applicable law, said interest rate and/or interest payments shall be considered to be an error, and immediately upon discovery thereof, such rate shall be renegotiated between Bank and Maker(s) and/or that portion of such interest payments that exceeds the maximum amount shall be refunded or, at the election of the Bank, deemed a partial prepayment of principal. From the date of default, or at any time during the continuance of any event of default, or at any time from and after maturity, at Bank's option, and notwithstanding the provisions concerning minimum and maximum interest rates provided in the first sentence of this paragraph, interest is payable per annum at *(check appropriate provision)* [   ] the maximum rate of interest which the Bank as a bank chartered under the laws of the State of Mississippi is permitted by law to contract and charge; [ X ] 0 % in excess of the rate of interest per annum provided hereinabove in the section of this note entitled "The RATE of Interest;" said rate to remain in effect until such default is cured to the Bank's satisfaction, is waived in writing by the Bank, in whole or in part, or the obligation is paid in full. Changes in the rate to be charged hereunder are to become effective without notice to the Obligor(s) hereto as stated hereinabove. Obligor(s) waive(s) notice of any rate adjustments.

Upon demand Obligor(s) agree(s) to pay all expenses and costs related to the loan evidenced hereby incurred or to be incurred in its making, servicing or collection, including, but not limited to, reasonable attorney's fees, filing and recording fees, insurance premiums and taxes. The Obligor(s) further agree(s) to pay to Bank, upon demand, all charges for services rendered or to be rendered by its officers and employees or others with whom the Bank shall contract or otherwise engage for such services directly for inspecting, verifying and servicing the collaterals securing the obligation set forth herein and for the collection of said loan.

The Obligor(s) has/have granted to Bank a lien or security interest in, has/have deposited with Bank or has/have pledged as collateral security for the payment of this and any other present or future indebtedness, advances or liability of the Obligor(s) to Bank, whether now due or hereafter to become due, including, without limitation, any and all antecedent debt, regardless of whether said antecedent debt and/or liabilities are of the same nature and type as that described herein and however evidenced, whether by note, endorsement, overdraft, guaranty, or otherwise, and any extensions or renewals thereof, and any modifications and/or refinancings thereof, directly or indirectly (as principal, endorser, surety, guarantor or otherwise), the property described as follows:

EMSPROM.PG1 08/1998 OPS v.7.2 09/04/2001

EXHIBIT

A

Mississippi Bankers Association
Form No. 1
(Revised November, 1985)
LAND

(SINGLE NOTE)
LDC - 072

This instrument prepared by
BANCORPSOUTH LOAN OPS.
PO BOX 4360
TUPELO, MS 38803-4360
662-680-2000

# LAND DEED OF TRUST

THIS INDENTURE, made and entered into this day by and between  VAN BUREN GROUP LLC

whose address is  P O BOX 2039                                                    RIDGELAND
                  (Street No. or RFD No. and Box)                                 (City)

MADISON                          MS
(County)                         (State)                  , as Grantor (herein designated as "Debtor"), and

J. PATRICK CALDWELL          PO BOX 4360 TUPELO, MS 38803-4360                     AS TRUSTEE,
(Name)                       (Address)

and BANCORPSOUTH BANK, of PO BOX 4360 TUPELO, MS 38803-4360
                            (Address)

as Beneficiary (herein designated as "Secured Party"), WITNESSETH:

WHEREAS, Debtor is indebted to Secured Party in the full sum of  FIVE MILLION FOUR HUNDRED THOUSAND

DOLLARS AND 00 CENTS

Dollars ($  5,400,000.00  ) evidenced by        said        promissory note(s) dated as shown below
in favor of Secured Party, bearing interest from date(s) of disbursement(s)  at the rate specified in the note(s) providing
for payment of attorney's fees for collection if not paid according to the terms thereof and being due and payable as set
forth below:

Note dated SEPTEMBER 05, 2001        for  FIVE MILLION FOUR HUNDRED THOUSAND
DOLLARS AND 00 CENTS                                    ($  5,400,000.00     ) Dollars
due and payable as follows:

AS TO PRINCIPAL ONLY: (Check appropriate provision(s))
☒ On  SEPTEMBER 05, 2003                                                                    ; or

☐ In _____ installments of $_____ each, commencing on _____
_____, and on the same day of each and every ☐
☐ month, ☐ quarter, ☐ six (6) months, or ☐ year thereafter, plus a final installment of the balance of
the principal and interest thereon on _____ .
☐ Other (Specify)

AS TO INTEREST ONLY: (Check appropriate provision(s))
☒ On  JANUARY 30, 2002                        , and on the same day of each and every ☐ month,
☐ quarter, ☒ six (6) months, or ☐ year thereafter; or
☐ Paid in advance to maturity by discount of the principal; or
☐ At maturity
☐ Other (Specify)

AS TO JOINT PRINCIPAL AND INTEREST: (Check appropriate provision(s))
☐ In _____ installments of $_____ each, commencing on _____
and on the same day of each and every ☐ month, ☐ quarter, ☐ six (6) months, or ☐ year thereafter,
plus a final installment of the balance of the principal and interest thereon on _____ ;
☐ On _____
☐ Other (Specify)

Said payment(s) shall be applied as provided in said note(s).

WHEREAS, Debtor desires to secure prompt payment of (a) the indebtedness described above according to its
terms and any renewals and extensions thereof, (b) any additional and future advances with interest thereon which
Secured Party may make to Debtor as provided in Paragraph 1, (c) any other indebtedness which Debtor may now or
hereafter owe to Secured Party as provided in Paragraph 2 and (d) any advances with interest which Secured Party
may make to protect the property herein conveyed as provided in Paragraphs 3, 4, 5 and 6 (all being herein referred to
as the "indebtedness").
NOW THEREFORE, in consideration of the existing and future indebtedness herein recited, Debtor hereby conveys
and warrants unto Trustee the land described below situated in the

City of OXFORD                          County of LAFAYETTE                          State of Mississippi:

See Exhibit A annexed hereto and made a part hereof as if copied herein verbatim.

STATE OF MISSISSIPPI
LAFAYETTE COUNTY  30094
I, BILL PLUNK, Chancery Clerk of Lafayette
County in said State hereby certify that
the within instrument was filed for record
at 9:30 o'clock A. M on the 12
day of Sept 200 1 and duly recorded
in book 810 on page 22
Given under my hand and seal of office
this 12 day of Sept A.D. 200 1
BILL PLUNK, Clerk
By Martin W. Grubb D.C.

RECEIVED
OCT 22 2001
EMSLDOT 1(H)/12/21/1998
QFS v 7.2 00/047/2001

Taylor Covington Smith
P. o. Box 3509
Jackson, MS 39207-3509

EXHIBIT
"B"

together with all improvements and appurtenances now or hereafter erected on, and all fixtures of any and every description now or hereafter attached to, said land (all being herein referred to as the "Property"). Notwithstanding any provision in this agreement or in any other agreement with Secured Party, the Secured Party shall not have a nonpossessory security interest in and its Collateral or Property shall not include any household goods (as defined in Federal Reserve Board Regulation AA, Subpart B), unless the household goods are identified in a security agreement and are acquired as a result of a purchase money obligation. Such household goods shall only secure said purchase money obligation (including any refinancing thereof).

THIS CONVEYANCE, HOWEVER, IS IN TRUST to secure prompt payment of all existing and future indebtedness due by Debtor to Secured Party under the provisions of this Deed of Trust. If Debtor shall pay said indebtedness promptly when due and shall perform all covenants made by Debtor, then this conveyance shall be void and of no effect. If Debtor shall be in default as provided in Paragraph 9, then, in that event, the entire indebtedness, together with all interest accrued thereon, shall, at the option of Secured Party, be and become at once due and payable without notice to Debtor, and Trustee shall, at the request of Secured Party, sell the Property conveyed, or a sufficiency thereof, to satisfy the indebtedness at public outcry to the highest bidder for cash. Sale of the property shall be advertised for three consecutive weeks preceding the sale in a newspaper published in the county where the Property is situated, or if none is so published, then in some newspaper having a general circulation therein, and by posting a notice for the same time at the courthouse of the same county. The notice and advertisement shall disclose the names of the original debtors in this Deed of Trust. Debtors waive the provisions of Section 89-1-55 of the Mississippi Code of 1972 as amended, if any, as far as this section restricts the right of Trustee to offer at sale more than 160 acres at a time, and Trustee may offer the property herein conveyed as a whole, regardless of how it is described.

If the Property is situated in two or more counties, or in two judicial districts of the same county, Trustee shall have full power to select in which county, or judicial district, the sale of the property is to be made, newspaper advertisement published and notice of sale posted, and Trustee's selection shall be binding upon Debtor and Secured Party. Should Secured Party be a corporation or an unincorporated association, then any officer thereof may declare Debtor to be in default as provided in Paragraph 9 and request Trustee to sell the Property. Secured Party shall have the same right to purchase the property at the foreclosure sale as would a purchaser who is not a party to this Deed of Trust.

From the proceeds of the sale Trustee shall first pay all costs of the sale including reasonable compensation to Trustee; then the indebtedness due Secured Party by Debtor, including accrued interest and attorney's fees due for collection of the debt; then all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances; and then, lastly, any balance remaining to Debtor.

IT IS AGREED that this conveyance is made subject to the covenants, stipulations and conditions set forth below which shall be binding upon all parties hereto.

1. This Deed of Trust shall also secure all future and additional advances which Secured Party may make to Debtor from time to time upon the security herein conveyed whether or not such future advances or future obligations are incurred for any purpose that was related or unrelated to the purpose of the promissory note(s) referenced above. Such advances shall be optional with Debtor and Secured Party and shall be on such terms as to amount, maturity and rate of interest as may be mutually agreeable to both Debtor and Secured Party. Any such advance may be made to any one of the Debtors should there be more than one, and if so made, shall be secured by this Deed of Trust to the same extent as if made to all Debtors.

2. This Deed of Trust shall also secure any and all other indebtedness (including, without limitation, antecedent debt) of Debtor due to Secured Party with interest thereon as specified, or of any one of the Debtors should there be more than one, whether direct or contingent, primary or secondary, sole, joint or several, now existing or hereafter arising at any time before cancellation of this Deed of Trust and regardless of whether any of the indebtedness is of the same nature or type as that described herein. Such indebtedness may be evidenced by note, open account, overdraft, endorsement, guaranty or otherwise.

3. Debtor shall keep all improvements on the land herein conveyed insured against fire, all hazards included with the term "extended coverage," flood in areas designated by the U.S. Department of Housing and Urban Development as being subject to overflow and such other hazards and in such amounts as Secured Party may reasonably require. All policies shall be written by reliable insurance companies acceptable to Secured Party, shall include standard loss payable clauses in favor of Secured Party and shall be delivered to Secured Party. Debtor shall promptly pay when due all premiums charged for such insurance, and shall furnish Secured Party the premium receipts for inspection. Upon Debtor's failure to pay the premiums, Secured Party shall have the right, but not the obligation, to pay such premiums. In the event of a loss covered by the insurance in force, Debtor shall promptly notify Secured Party who now may make proof of loss if timely proof is not made by Debtor. All loss payments shall be made directly to Secured Party as loss payee who may either apply the proceeds to the repair or restoration of the damaged improvements or to the indebtedness of Debtor, or release such proceeds in whole or in part to Debtor.

4. Debtor shall pay all taxes and assessments, general or special, levied against the Property or upon the interest of Trustee or Secured Party therein, during the term of this Deed of Trust before such taxes or assessments become delinquent, and shall furnish Secured Party the tax receipts for inspection. Should Debtor fail to pay all taxes and assessments when due, Secured Party shall have the right, but not the obligation, to make these payments.

Bankers Systems, Inc. St. Cloud, MN

5. Debtor shall keep the Property in good repair and shall not permit or commit waste, impairment or deterioration thereof. Debtor shall use the Property for lawful purposes only. Secured Party may make or arrange to be made entries upon and inspections of the Property after first giving Debtor notice prior to any inspection specifying a just cause related to Secured Party's interest in the Property. Secured Party shall have the right, but not the obligation, to cause needed repairs to be made to the Property after first affording Debtor a reasonable opportunity to make the repairs.

Should the purpose of the primary indebtedness for which this Deed of Trust is given as security be for construction of improvements on the land herein conveyed, Secured Party shall have the right to make or arrange to be made entries upon the Property and inspections of the construction in progress. Should Secured Party determine that Debtor is failing to perform such construction in a timely and satisfactory manner, Secured Party shall have the right, but not the obligation, to take charge of and proceed with the construction at the expense of Debtor after first affording Debtor a reasonable opportunity to continue the construction in a manner agreeable to Secured Party.

6. Any sums advanced by Secured Party for insurance, taxes, repairs or construction as provided in Paragraphs 4, 4 and 5 shall be secured by this Deed of Trust as advances made to protect the Property and shall be payable by Debtor to Secured Party, with interest at the rate specified in the note representing the primary indebtedness, within thirty days following written demand for payment sent by Secured Party to Debtor by certified mail. Receipts for insurance premiums, taxes and repair or construction costs for which Secured Party has made payment shall serve as conclusive evidence thereof.

7. As additional security Debtor hereby assigns to Secured Party all rents accruing on the Property. Debtor shall have the right to collect and retain the rents as long as Debtor is not in default as provided in Paragraph 9. In the event of default, Secured Party in person, by an agent or by a judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and collect the rents. All rents so collected shall be applied first to the costs of managing the Property and collecting the rents, including fees for a receiver and an attorney, commissions to rental agents, repairs and other necessary related expenses and then to payments on the indebtedness.

8. If all or any part of the Property, or an interest therein, is sold or transferred by Debtor, excluding (a) the creation of a lien subordinate to this Deed of Trust, (b) a transfer by devise, by descent or by operation of law upon the death of a joint owners or (c) the grant of a leasehold interest of three years or less not containing an option to purchase, Secured Party may declare all the indebtedness to be immediately due and payable. Secured Party shall be deemed to have waived such option to accelerate if, prior or subsequent to the sale or transfer, Secured Party and Debtor's successor in interest reach agreement in writing that the credit of such successor in interest is satisfactory to Secured Party and that the successor in interest will assume the indebtedness so as to become personally liable for the payment thereof. Upon Debtor's successor in interest executing a written assumption agreement accepted in writing by Secured Party, Secured Party shall release Debtor from all obligations under the Deed of Trust and the indebtedness unless the Assumption Agreement states otherwise.

If the conditions resulting in a waiver of the option to accelerate are not satisfied, and if Secured Party elects not to exercise such option, then any extension or modification of the terms of repayment from time to time by Secured Party shall not operate to release Debtor or Debtor's successor in interest from any liability imposed by this Deed of Trust or by the indebtedness.

If Secured Party elects to exercise the option to accelerate, Secured Party shall send Debtor notice of acceleration by certified mail. Such notice shall provide a period of thirty days from the date of mailing within which Debtor may pay the indebtedness in full. If Debtor fails to pay such indebtedness prior to the expiration of thirty days, Secured Party may, without further notice to Debtor, invoke any remedies set forth in this Deed of Trust.

9. Debtor shall be in default under the provisions of this Deed of Trust, at the option of Secured Party, if debtor (a) shall fail to comply with any of Debtor's covenants or obligations contained herein, or in the note(s) or in the Loan Agreement, (b) shall fail to pay any of the indebtedness secured hereby, or any installment thereof or interest thereon, as such indebtedness, installment or interest shall be due by contractual agreement or by acceleration, (c) shall become bankrupt or insolvent or be placed in receivership, or upon the death of Debtor, (d) shall, if a corporation, a partnership or an unincorporated association, be dissolved voluntarily or involuntarily, or (e) if Secured Party in good faith deems itself insecure and its prospect of repayment seriously impaired.

10. Secured Party may at any time, without giving formal notice to the original or any successor Trustee, or to Debtor, and without regard to the willingness or inability of any such Trustee to execute this trust, appoint another person or succession of persons to act as Trustee, and such appointee in the execution of this trust shall have all the powers vested in and obligations imposed upon Trustee. Should Secured Party be a corporation or an unincorporated association, then any officer thereof may make such appointment.

11. Each privilege, option or remedy provided in this Deed of Trust to Secured Party is distinct from every other privilege, option or remedy contained herein or afforded by law or equity, and may be exercised independently, concurrently, cumulatively or successively by Secured Party or by any other owner or holder of the indebtedness. Forbearance by Secured Party in exercising any privilege, option or remedy after the right to do so has accrued shall not constitute a waiver of Secured Party's right to exercise such privilege, option or remedy in event of any subsequent accrual.

12. The words "Debtor" or "Secured Party" shall each embrace one individual, two or more individuals, a corporation, a partnership or an unincorporated association, depending on the recital herein of the parties to this Deed of Trust. The covenants herein contained shall bind, and the benefits herein provided shall inure to, the respective legal or personal representatives, successors or assigns of the parties hereto subject to the provisions of Paragraph 8. If there be more than one Debtor, then Debtor's obligations shall be joint and several. Whenever in this Deed of Trust the context so requires, the singular shall include the plural and the plural the singular. Notices required herein from Secured Party to Debtor shall be sent to the address of Debtor shown in this Deed of Trust.

13. This Deed of Trust is given and taken in renewal and extension of the following described Deed(s) of Trust which are recorded in the Book(s) and at the page(s) of the deeds and records of the county(ies) of the State of Mississippi shown below, and is in no way intended to void said deed(s) of trust or impair the security thereof, to-wit:

| Trust Deed Dated _____ | recorded in Book _____ | Page _____ of _____ County, MS |
| Trust Deed Dated _____ | recorded in Book _____ | Page _____ of _____ County, MS |
| Trust Deed Dated _____ | recorded in Book _____ | Page _____ of _____ County, MS |

IN WITNESS WHEREOF, Debtor has executed this Deed of Trust on the __STH__ day of SEPTEMBER 2001.

CORPORATE, PARTNERSHIP OR ASSOCIATION SIGNATURE          INDIVIDUAL SIGNATURES

VAN BUREN GROUP, LLC
_____
Name of Debtor

By
_C. Frazier_
CLAIBORNE FRAZIER, MEMBER        Title

Attest: _____
                                 Title

(Seal)

Bankers Systems, Inc. St. Cloud, MN
GFS v 7.2 05/04/2001

**INDIVIDUAL ACKNOWLEDGEMENT**

STATE OF MISSISSIPPI
COUNTY OF _____

This day personally appeared before me, the undersigned authority in and for the State and County aforesaid, the

within named _____ who acknowledged that ____ he ____ signed and delivered the foregoing

Deed of Trust on the day and year therein mentioned.

Given under my hand and official seal of office, this the _____ day of _____

My Commission Expires _____

_____
NOTARY PUBLIC

**CORPORATE, PARTNERSHIP OR ASSOCIATION ACKNOWLEDGEMENT**

STATE OF MISSISSIPPI
COUNTY OF _____ HINDS _____

This day personally appeared before me, the undersigned authority in and for the State and County aforesaid, _____

CLAIBORNE FRAZIER, MEMBER _____ and _____
(Title)                                                                      (Title)

respectively of Debtor, the above named _____ VAN BUREN GROUP, LLC , a Mississippi limited

liability company _____

a corporation-a partnership-an unincorporated association, who acknowledged that for and on its behalf, ____ he ____ signed, sealed
and delivered the foregoing Deed of Trust on the day and year therein mentioned as its act and deed, being first duly authorized so to do.

Given under my hand and official seal of office, this the _____ 5TH _____ day of _____ SEPTEMBER _____ , 2001

My Commission Expires

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES JULY 28, 2003
BONDED THRU STEGALL NOTARY SERVICE

_____
NOTARY PUBLIC

**LAND DEED OF TRUST**

from

to

| | |
|---|---|
| Trustee | |
| | |
| Filed for Record | |
| _____ o'clock _____ M. | |
| _____ Clerk | |
| STATE OF MISSISSIPPI | |
| Chancery Court _____ County | |
| I certify that this Deed of Trust was filed for record in | |
| my office at _____ o'clock _____ M., on | |
| the _____ day of _____ day of _____ | |
| and was duly recorded the _____ on page _____ | |
| Book No. _____ in my office. | |
| Witness my hand and seal of office, this | |
| day of _____ | |
| _____ Clerk | |
| _____ D. C. | |

Bankers Systems, Inc. St. Cloud, MN

EXHIBIT "A"

Part of Section 21, Township 8 South, Range 3 West, and Lot 14 of the City of Oxford, Lafayette County, Mississippi, and shown on the official map and plat of the City of Oxford described as follows:

Beginning at a found iron pin at the Northwest corner of said Lot 14 and run thence South 79 degrees 36 minutes 00 seconds East with the South ROW of Van Buren Avenue 131.93 feet to a found iron pin; thence South 10 degrees 24 minutes 01 seconds West 132.00 feet to a found iron pin; thence North 79 degrees 34 minutes 41 seconds West 132.00 feet to a found iron pin on the East ROW of 14th Street; thence North 10 degrees 25 minutes 59 seconds East with said East ROW 131.95 feet to the point of beginning.  Containing 17,417 square feet or 0.40 acres, more or less.

SIGNED FOR IDENTIFICATION:

_C Frazier_

VAN BUREN GROUP, LLC.
BY: CLAIBORNE FRAZIER, A MEMBER

_9-5-01_

DATE

Indexing Instructions:

Lot 14, City of Oxford and
Part of Section 21, Township 8
South, Range 3 West, Lafayette County

Collateral securing other indebtedness or liabilities to the Bank may also secure this loan.

1ST TO 30 CONDOMINIUMS                                    AND GUARANTEED BY SHELBY K BRANTLEY
.40 ACRE(S) LOCATED AT VAN BUREN CONDOS                   AND GUARANTEED BY ROBERT K CRUMPTON
30 UNITS
OXFORD , LAFAYETTE COUNTY , MS

ASSIGNMENT OF AGREEMENT BETWEEN
OWNER IVAN BUREN GROUP LLCI AND
ARCHITECT IFERGUSON & ASSOCIATES
ARCHITECTS PAI
P.O. BOX 2039
RIDGELAND MS 391570000

AND GUARANTEED BY C E FRAZIER
AND GUARANTEED BY CLAIBORNE FRAZIER
AND GUARANTEED BY AUSTIN FRAZIER

Thus, in addition to the Bank's right of set-off provided herein, this Note is secured by all collateral security now pledged or hereafter pledged to Bank by Obligor(s), or as hypothecated to Bank by others, and any present or future agreement securing any other debt Obligor(s) owe Bank also secures the payment of the Obligations hereof, whether any such collateral security is specifically described above or not.

(check appropriate provision(s)):
[  ] REPLENISHABLE MASTER NOTE: This is a Revolving Master Note, upon which the maker(s) can borrow, repay, and reborrow up to the amount of this Note during the term of the Note provided that Obligor(s) is (are) in compliance with all terms, conditions, and covenants stated herein and/or in corresponding credit agreement(s).
[X] NON-REPLENISHABLE MASTER NOTE: This is a Revolving Master Note, upon which the maker(s) can borrow in various amounts up to the amount of this Note during the term of the Note provided that Obligor(s) is (are) in compliance with all terms, conditions, and covenants stated herein and/or in corresponding credit agreement(s).
[  ] If a payment is more than 15 days past due, a late payment charge of the lesser of $50.00 or 4% of the delinquency will be charged. This charge will be collected only one time on a specific installment and will not be collected on a partial payment resulting from the deduction of a late payment charge from a regular scheduled payment.
[  ] Advances under this Note are subject to other terms and conditions of Construction Loan agreement, of even date herewith, between Maker and Payee.
In the event of the prepayment in whole or in part of the indebtedness evidenced hereby, (check appropriate provision):
[  ] The following prepayment penalty will apply: _____ % of the principal amount(s) paid prior to maturity and during the first year of the term hereof; _____ % of the principal amount(s) paid prior to maturity and during the second year of the term hereof; _____ % of the principal amount(s) paid prior to maturity and during the third year of the term hereof.
Obligor(s) agree(s) to at all times keep all tangible Collateral Security insured against risks of fire, theft, collision (in case of motor vehicle Collateral Security) and such other risks and hazards in such amounts as Bank may reasonably request, with any loss payable to Bank to the extent of its interest, with Obligor(s) hereby assigning to Bank, as additional security, any and all monies due or to become due under, and all other rights of Obligor(s) with respect to, any and all policies of insurance covering the Collateral Security. In the event Obligor(s) fail to observe this agreement to provide insurance, Bank may (but need not) in the name, place and stead of Obligor(s), or at Bank's option, in Bank's own name, procure and maintain such insurance, or such other insurance protecting only the interest of Bank.
In the event that a partial payment is made on this note and such partial payment is applied to said note in a manner other than first to interest, balance to principal, such payment proceeds application shall be deemed to have been requested by Obligor(s) hereof for such application of said proceeds and the agreement of the Bank to so do.
Upon the happening of any of the following events, all of the aforesaid liabilities shall, without notice, at the option of the Bank, become immediately due without demand for payment thereof: (a) the failure of any Obligor to perform any agreement hereunder or related to the loan evidenced hereby, including but not limited to the failure to pay when due any amount required to be paid hereunder, or the non-payment at maturity of this note, any interest accrued thereon, or any other liability to said Bank or holder; (b) the death of any Obligor; (c) the filing of any petition under any Bankruptcy Act, Federal or State, by or against any Obligor; (d) the filing of any application for the appointment of a receiver or the making of a general assignment for the benefit of creditors by, or any other act of insolvency of any Obligor, however expressed or indicated; (e) the entry of any judgment against any Obligor; (f) the issuing of any attachment or garnishment or the filing of any lien against any property of any Obligor; (g) the determination by Bank that a material adverse change has occurred or is reasonably likely to occur in the business or financial condition of any Obligor; (h) the dissolution, merger, consolidation or reorganization of any Obligor; (i) the sale or assignment by any Obligor of any equity or other right in any of the collateral without the written consent of Bank; (j) the taking of possession of any substantial part of the property of any Obligor at the instance of any governmental authority; (k) the failure to pay when due all expenses and taxes as required hereinabove and the premium on any life insurance policy assigned as collateral to the Bank; and/or the failure to pay the premium when due on any other type of insurance policy required by Bank concerning this note and/or said collateral security; (l) the Bank in good faith deeming itself to be insecure; (m) the failure to promptly furnish sufficient additional security, when in the opinion of the Bank or holder hereof such is needed, at the option of said Bank or holder; and/or (n) the transfer, without the written consent of Bank, of any collateral security this note to any state other than the state in which said Bank's lien(s) on said collateral security is (are) and/or shall be perfected.
No delay or omission on the part of the Bank, or the holder, in exercising any right hereunder or related to the obligations evidenced hereby shall operate as a waiver of such right or of any other right. A waiver on any one occasion shall not be construed as a bar to or waiver of any such right and remedy on any future occasion.
Every Obligor, whether primarily or secondarily liable on this note or the indebtedness evidenced hereby, agrees that any monies or other property at any time in the possession of Bank belonging to any of said parties and any deposits, balance of deposits or other sums at any time credited by or due from Bank to any of said parties, may at all times, at the option of Bank, be held and treated as collateral security for the payment of any liability of Obligor(s) to Bank, whether due or not due, and Bank may, at its sole option and at any time before or after default, set off the amount due or to become due hereon against any claim of any of said parties against Bank.
Every Obligor of this note or the obligation set forth herein waives presentment, demand, notice, protest and all other demands and notices in connection with the delivery, acceptance, performance, default or endorsement of this Note or their respective obligations hereon and any defenses based on suretyship or impairment of collateral; consents to any extensions or postponements of the due date or time of payment hereof, or of any modifications, renewals, extensions or refinancings, of this or of any other indebtedness (with or without the concurrence of the Obligor(s)) in whole or in part without notice to the Obligor(s) and without limitation as to the number of such extensions, modifications, renewals, or refinancings, or the period or periods thereof; and consents to any substitution, exchange or release of collateral and/or to the addition or release of any other party or person, whether primarily or secondarily liable. Any such extension or modification may be noted hereon or at Bank's option, or be described in a separate agreement executed by Obligor(s).
Any provision(s) herein that is (are) or that shall become void or unenforceable shall not render any other provision(s) hereof void or unenforceable.
All rights and powers of Bank hereunder shall inure to the benefit of any subsequent holder or assignee of this Note and the owner of any part of the debt evidenced thereby.
This instrument shall be governed by and construed in accordance with the laws of the State of Mississippi and applicable Federal law.
It is agreed by all parties hereto that the proceeds of this loan (check appropriate provision) [ X ] will not [  ] will be used primarily for personal, family, or household purposes.
Waiver of Trial by Jury.  OBLIGOR(S) AND BANK WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION BY BANK OR BY OBLIGOR(S) IN ANY WAY CONNECTED WITH THIS NOTE, THE OBLIGATION(S) EVIDENCED HEREBY, INCLUDING THOSE OF OBLIGOR(S) UNDER ANY OTHER LOAN DOCUMENTS, THE TRANSACTION(S) RELATED HERETO, OR THE DEBTOR-CREDITOR RELATIONSHIP CREATED HEREBY.

Address(es)                                               Signature(s) of Maker(s)

P O BOX 2039                                              C Frazier

RIDGELAND, MS 39157                                       VAN BUREN GROUP LLC
                                                         BY CLAIBORNE FRAZIER, MEMBER

EMSPROM.PG2 08/1998

EXHIBIT
"G"

**BancorpSouth**

## UNCONDITIONAL AND CONTINUING GUARANTY (the "GUARANTY")

BY: CLAIBORNE FRAZIER_____ (hereinafter the "GUARANTOR")

For good and valuable consideration, the receipt of which is hereby acknowledged, and to induce BANCORPSOUTH BANK, a Mississippi banking corporation, its successors, participants, transferees, and assigns, (the "Bank") to extend or continue to extend credit to and/or otherwise acquire Obligations owing by JOHN BURGESS GROUP LLC and its successors and assigns, heirs and legal representatives (the "Borrower"), and as a condition precedent thereto, and for the benefit to Guarantor from such accommodation, Guarantor hereby agrees as follows:

1. Guaranty. Guarantor, regardless of any percentage of ownership or interest in Borrower by Guarantor, if any, hereby absolutely, continually, irrevocably and unconditionally guaranties to Bank the full and prompt payment when due, whether at maturity, by acceleration, or otherwise (check appropriate provision):

[X] the full amount of all, or, [ ] to the amount of [ ]_____( ) Dollars,

of the Indebtedness, liabilities and obligations of Borrower to Bank of every kind and nature, whether absolute or contingent, continuing or not, due or to become due, primary or secondary, now existing or hereafter arising, secured or unsecured created directly or acquired indirectly, and however evidenced by any instrument(s) that create(s) or continue(s) obligation(s) of Borrower to Bank, AND IN ADDITION, all interest thereon and any fees, costs, and expenses or other amounts provided for under the documentation of such obligations, any renewals, extensions, modifications, and for refinancings thereof, and all reasonable fees, costs, and expenses of Bank's counsel, incurred in connection with any of the Obligations and /or the enforcement of this Guaranty, and any non-bankruptcy petition interest and attorney's fees and any other amounts which Borrower is prohibited or discharged from paying, or which do not otherwise accrue as part of the Obligations due to Borrower's discharge (all hereinafter the "Obligations").

Nothing in this Guaranty is intended to require nor should it be construed to require the signature of the spouse of any Borrower, if any, in violation of Regulation B, 12 CFR Part 202.7 In connection with this or any other indebtedness or Obligations of Borrower to Bank.

If limited to a stated amount above, Guarantor agrees:
(a) that any payment made by Guarantor shall only be effective to reduce the stated limit of liability if accompanied by a written transmittal document, received by Bank, advising that such payment is made under this Guaranty for such purpose; and
(b) that Bank may create, renew, refinance, extend, modify or continue any of the Obligations in excess of said limit, and may apply any sums received on the Obligations from any other source to payment of the excess, without reducing the liability of Guarantor hereunder.

2. Unconditional Guaranty. (a) The liability of Guarantor is primary, absolute, unconditional, continuing, complete and irrevocable, and will not be discharged except by complete and final performance of the Obligations and so all need occur to establish Guarantor's liability hereunder, regardless of:
(i) the validity or enforceability of the Obligations or of any security interest, mortgage or pledge granted by Borrower or by any person(s) secondarily or otherwise liable for any of the Obligations (hereinafter "Other Obligor(s)"), or any other device providing Collateral Security for payment of the Obligations, including the right of setoff against any deposits or credits (hereinafter the "Collateral Security");
(ii) the exercise of, delay in, or timing of any action by Bank to enforce or exhaust its remedies under or against the Obligations and/or the Collateral Security;
(iii) the waiver or consent by Bank with respect to any provision in the documentation of the Obligations or the Collateral Security;
(iv) any action to seek or enforce a judgement against Borrower or any Other Obligor(s);
(v) any interruptions in the business relations of Borrower with Bank, or whether the Obligations are assumed by or refinanced for any subsequent Borrower ;
(vi) any failure to obtain, properly perfect, protect or insure, or any impairment, deterioration, waste, or loss of any Collateral Security, regardless of the cause;
(vii) any other circumstance which might, absent the unconditional and continuing nature of this Guaranty, constitute a defense of a Guarantor.

(b) The liability of Guarantor hereunder shall not be extinguished:
(i) with respect to any amount, regardless of when or by whom paid, which is required to be returned to such Borrower or any trustee or receiver, by reason of the bankruptcy, insolvency, dissolution, or death of such Borrower, or for any other reason, all as though such amount had never been paid;
(ii) even though Borrower or Other Obligor has any such obligation in bankruptcy or otherwise discharged by law;
(iii) until complete and final performance of all Obligations of Borrower to Bank, including the expiration of any and all applicable preference periods under United States Bankruptcy laws, during which period(s) payments on the Obligations may be required to be returned to the payor thereof, or any trustee or other representative.

3. Direct Liability for Obligations. Regardless of any demand from Guarantor, if any, Bank shall not be bound to seek payment from or exhaust its recourse, in whole or in part, against the Borrower, other Guarantors, if any, or any Other Obligor(s), or upon the Collateral Security, before being entitled to payment from Guarantor hereunder.

4. Right of Setoff. Bank shall have the right of setoff with respect to deposits and credits in favor of Guarantor as it has with respect to deposits and credits of Borrower.

5. Bank Action or Inaction. Bank may at any time, in Bank's sole discretion, and without the consent of, or notice to Guarantor, and without affecting Guarantor's liability hereunder:
(a) change, alter, modify, renew, continue, increase, refinance, extend and/or accelerate all or any of the Obligations, or any part(s) thereof, including the times for performance (whether or not for longer than any original period) and /or change or modify the interest rates, maturities, payments or other terms of an Obligations and /or the parties thereto, and/or otherwise make changes of any sort whatsoever in the terms of its documentation with the Borrower or manner of doing business with the Borrower, and/or with Other Obligors, or in any other manner whatsoever;
(b) make additional advances against, transfer, amend, restate, substitute, replace, or terminate any existing Obligation and the documentation therefore;
(c) sell, exchange, release, impair, substitute, modify, adjust, or surrender any of the Collateral Security;
(d) take or not take any action at to any or all of the Collateral Security, apply the proceeds of any Collateral Security sale against any of the Obligations in any order or sequence, or as it deems best; or make any election under Section 1111 (b)(2) of the United States Bankruptcy Code; or establish the priority of any Collateral Security;
(e) grant adjustments, forbearances, or indulgences to settle or compromise with, or sue or not sue any Borrower, or any other Guarantor, or Other Obligor as to any or all of the Obligations, and/or subordinate the same or any part thereof to any other obligations or release or refuse to enforce same; and/or
(f) apply all monies received from Borrower or Other Obligors as it deems best.

6. No Subrogation. No payment by Guarantor or other satisfaction of Guarantor's liabilities hereunder shall entitle Guarantor to any payment from Borrower, from the proceeds of the property of Borrower or from any Collateral Security, and Guarantor relinquishes all of Guarantor's present and future claims, rights and remedies against Borrower, including but not limited to, the right of contribution, reimbursement, indemnification, subrogation, exoneration, and any right to participate in any claim or remedy the Bank may have against the Borrower, or the Collateral Security, whether such claim or remedy arises in equity, under contract, or in law.

7. Waivers. Guarantor expressly waives TRIAL BY JURY per Section 22 and also waives:
(a) acceptance and notice of the acceptance of this Guaranty;
(b) diligence, presentment and demand for payment of any of the Obligations or under this Guaranty;
(c) protest, notice of protest, notice of dishonor and/or notice of nonpayment, acceleration of default of or to Guarantor or to any Other Obligor;
(d) discharge under Section 3-605 of the Uniform Commercial Code, any amendments thereto, and any and all other defenses based on suretyship or impairment of collateral;
(e) filings of claims or proofs of claim with any court as to which Borrower or any Other Obligor is subject;
(f) the failure of other persons to sign a guaranty, or any documentation associated with the Obligations;
(g) notice of any adverse change in Borrower's financial condition or of any other fact, if any, which may increase Guarantor's risk; and/or
(h) notice of the extension of credit from time to time by Bank to Borrower , the creation, existence, or acquisition of any Obligations hereby guaranteed, and of notice of the amount of Obligations of Borrower to Bank from time to time.
Guarantor further waives any and all defenses, claims and discharges of Borrower, or of any Other Obligor, pertaining to the Obligations or Collateral Security, except the defense of discharge by payment in full, and Guarantor will not assert, plead or enforce against Bank any defense of waiver, failure of consideration, breach of warranty, lender liability, accord and satisfaction, novation, release, res judicata, statue of frauds, statue of limitations, fraud, incapacity, minority, usury, defense based upon manner of Collateral Security disposition, homestead exemption, valuation, stay or moratorium law, or unenforceability, which may be available to Borrower or any Other Obligor.

8. Borrower's Financial Condition. Guarantor is aware of the financial condition of Borrower and delivers this Guaranty based solely upon independent investigation and not upon any representation of Bank. Guarantor assumes responsibility for obtaining any initial current, ongoing, or additional information concerning Borrower's financial condition as Guarantor may deem necessary, and Guarantor is not relying upon, nor expecting Bank to furnish Guarantor any information concerning Borrower's financial condition. Guarantor hereby knowingly accepts the full range of risks encompassed within a contract of guaranty, including the possibility that Borrower will contract additional Obligations for which Guarantor may be liable hereunder after Borrower's financial condition or ability to pay has deteriorated.

9. Guarantor's Financial Condition. Guarantor covenants that during the time this Guaranty is in effect, there will be no material adverse change in Guarantor's financial status, and Guarantor will not sell, mortgage, pledge or otherwise convey or transfer any material portion of Guarantor's property, without first obtaining Bank's written consent therefor.

bsdguar.pg1   02-31-30008 QFS v 8.2.2  03-15-2004

EXHIBIT
C-1
tabbies®

10. **Subordination.** Guarantor agrees that all of the present and future indebtedness of Borrower to Guarantor, if any, shall be and is hereby subordinated to Bank.

11. **Legal Rates of Interest.** Nothing contained herein shall be construed to authorize Bank to charge or collect from Borrower or Guarantor interest that is not yet accrued, is unearned or subject to rebate, or is otherwise not entitled to be collected by Bank under applicable law. To the extent that any performance of this Guaranty would violate any applicable usury statute or other applicable law, the obligation to be fulfilled by Guarantor shall be reduced to the limit legally permitted, so that this Guaranty shall not require any performance in excess of the limit legally permitted, but shall Obligation shall be fulfilled to the limit of the legal validity. Any interest paid hereunder for a Borrower who is a corporation or partnership shall have been contracted for by said corporation or partnership as Borrower, in accordance with applicable law as to interest rates that Mississippi corporations and/or partnerships may legally contract.

12. **Assignment.** Bank may assign its rights under this Guaranty without Guarantor's consent, and any such assignee shall have the same rights and remedies as if originally named herein.

13. **Breach by Guarantor.** In the event of any breach by Guarantor of any provision hereof, the liability of Guarantor hereunder, regardless of the term(s) of the Obligations with Borrower shall, at Bank's option, be deemed to have matured, and Bank may take any action necessary to enforce this Guaranty.

14. **No Waiver of Rights.** No delay or failure on the part of Bank in exercising any right hereunder shall operate as a waiver of such rights, and any notice or lack of notice on Guarantor shall not be a waiver of the right of Bank to take further action, with or without notice.

15. **Cumulative Remedies.** The rights and remedies of Bank hereunder are cumulative and not exclusive of any other rights or remedies provided by law.

16. **Effect of Other Guaranties.** This Guaranty does not supersede or cancel any other guaranties given by Guarantor, or any other Guarantor on behalf of Borrower, but to the contrary shall be in addition thereto.

17. **Reference to Guarantor/Binding Effect.** If more than one Guarantor guarantees the Obligations, each and every such guaranty shall be the joint and several undertaking of all such Guarantors. Each reference to Guarantor in any documents associated with Obligations or in any Guaranty shall be construed in the singular or plural as the context may require and shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of any Guarantor, all of whom shall be bound for the full payment of the entire amount guaranteed hereby, and with said Borrower for the payment of the Obligations as if they came were due or owing by Guarantor as a party thereto, whether furnished to or executed by Guarantor or not, or whether executed contemporaneously with this Guaranty or not.

18. **Governing Law.** This Guaranty shall be governed by the laws of the State of Mississippi        , without reference to its conflicts of laws principles. If Bank brings any action hereunder in any courts, state or federal, in Mississippi    Guarantor consents to and acknowledges personal jurisdiction over Guarantor in such court, and waives any objection to venue in such court.

19. **Severabilities.** If any part of this Guaranty is found invalid, such provision shall be inapplicable and deemed omitted, with the remainder hereof not invalidated thereby, and still given full force and effect.

20. **Circumstances of Execution/Professional Advice Availability.** Guarantor confirms to Bank that Guarantor has either actually consulted or has had the ability to consult, or has knowingly chosen not to consult with an attorney of Guarantor's own choosing prior to execution of this Guaranty, therefore Guarantor fully understands and/or fully assumes total responsibility for the legal consequences of executing this Guaranty, that Guarantor has read this Guaranty in full, and understands the terms and conditions hereof, having not relied upon any representations of Bank as to the nature, terms or effect of this Guaranty.

21. **Entire Contract.** This Guaranty expresses the entire understanding of the parties with respect to the subject matter hereof and may not be waived or varied orally.

22. **Waiver of Trial by Jury.** GUARANTOR AND BANK WAIVE ANY RIGHT OF TRIAL BY JURY IN ANY ACTION BY BANK OR BY GUARANTOR IN ANY WAY CONNECTED WITH THIS GUARANTY, THE OBLIGATION EVIDENCED HEREBY, INCLUDING THOSE OF BORROWER, UNDER OR ARISING FROM ANY OTHER LOAN DOCUMENTS, THE TRANSACTION(S) RELATED HERETO, OR THE DEBTOR-CREDITOR RELATIONSHIP CREATED HEREBY.

---

### NOTICE TO GUARANTOR

You are being asked to guarantee this debt, which are called "Obligations" in this Guaranty. This includes all future debts of the Borrower, as well. Think carefully before you sign this Guaranty. If the Borrower does not pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the Borrower does not pay. You may have to pay late fees or collection costs. The creditor (Bank) can collect this debt from you without first trying to collect from the Borrower. This creditor can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

---

IN WITNESS WHEREOF, Guarantor has executed and delivered this guaranty on this the_____ day of_____,

Guarantor is a(n) Individual _____

By:  *Claiborne Frasier*                                    By: _____

By: _____                                    By: _____

**BancorpSouth**

## UNCONDITIONAL AND CONTINUING GUARANTY (the "GUARANTY")

BY <u>AUSTIN FRAZIER</u> _____ (hereinafter the "GUARANTOR")

For good and valuable consideration, the receipt of which is hereby acknowledged, and to induce BANCORPSOUTH BANK, a Mississippi banking corporation, its successors, participants, transferees, and assigns, (the "Bank") to extend or continue to extend credit to and/or otherwise acquire Obligations owing from VAN BUREN CHOICE LLC _____ (the "Borrower"), and as a condition precedent thereto, and for the benefit to Guarantor from such and its successors and assigns, heirs and legal representatives (the "Borrower"), and as a condition precedent thereto, and for the benefit to Guarantor from such accommodation, Guarantor hereby agrees as follows:

1. **Guaranty.** Guarantor, regardless of any percentage of ownership or interest in Borrower by Guarantor, if any, hereby absolutely, continually, irrevocably and unconditionally guarantees to Bank the full and prompt payment when due, whether at maturity, by acceleration, or otherwise (check appropriate provision):
[X] the full amount of all, or, [ ] to the amount of _____
_____ ) Dollars, of the indebtedness, liabilities and obligations of Borrower to Bank of every kind and nature, whether absolute or contingent, continuing or not, due or to become due, primary or secondary, now existing or hereafter arising, secured or unsecured created directly or acquired indirectly, and however evidenced by any instrument(s) that create(s) or constitute(s) obligation(s) of Borrower to Bank, AND IN ADDITION, all interest thereon and any fees, costs, and expenses or other amounts provided for under the documentation of such obligation, any renewals, extensions, modifications, and for refinancings thereof, and all reasonable fees, costs, and expenses of Bank's counsel, incurred in connection with any of the Obligations and for the enforcement of this Guaranty, and any post-bankruptcy petition interest and attorney's fees and any other amounts which Borrower is prohibited or discharged from paying, or which do not otherwise accrue as part of the Obligations due to Borrower's discharge (all hereinafter the "Obligations").

Nothing in this Guaranty is intended to require nor should it be construed to require the signature of the spouse of any Borrower, if any, in violation of Regulation B, 12 CFR Part 202.7 in connection with any of any other indebtedness or Obligations of Borrower to Bank.

If limited to a stated amount above, Guarantor agrees:
    (a)    that any payment made by Guarantor shall only be effective to reduce the stated limit of liability if accompanied by a written transmittal document, received by Bank, advising that such payment is made under this Guaranty for such purpose; and
    (b)    that Bank may create, renew, refinance, extend, modify or continue any of the Obligations in excess of said limit, and may apply any sums received on the Obligations from any other source to payment of the excess, without reducing the liability of Guarantor hereunder.

2. **Unconditional Guaranty.** (a) The liability of Guarantor is primary, absolute, unconditional, continuing, complete and irrevocable, and will not be discharged except by complete and final performance of the Obligations and so not need occur to establish Guarantor's liability hereunder, irrespective of, but not limited to:
    (i)    the validity or enforceability of the Obligations or of any security interest, mortgage or pledge granted by Borrower or by any person(s) secondarily or otherwise liable for any of the Obligations (hereinafter "Other Obligor(s)"), or any other device providing Collateral Security for payment of the Obligations, including the right of setoff against any deposits or credits (hereinafter the "Collateral Security");
    (ii)    the absence of, delay in, or timing of any action by Bank to enforce or exhaust its remedies under or against the Obligations and/or the Collateral Security;
    (iii)    the waiver or consent by Bank with respect to any provision in the documentation of the Obligations or the Collateral Security;
    (iv)    any action to seek or enforce a judgement against Borrower or any Other Obligor(s);
    (v)    any interruptions in the business relations of Borrower with Bank, or whether the Obligations are assumed by or refinanced for any subsequent borrower ;
    (vi)    any failure to obtain, properly perfect, protect or insure, or any impairment, deterioration, waste, or loss of any Collateral Security, regardless of the cause;
    (vii)    any other circumstance which might, absent the unconditional and continuing nature of this Guaranty, constitute a defense of a Guarantor.
    (b)    The liability of Guarantor hereunder shall not be extinguished:
    (i)    with respect to any amount, regardless of when or by whom paid, which is required to be returned to such Borrower or any trustee or receiver, by reason of the bankruptcy, insolvency, dissolution, or death of such Borrower, or for any other reason, all as though such amount had never been paid;
    (ii)    even though Borrower or Other Obligor has any such obligation discharged in bankruptcy or otherwise discharged by law;
    (iii)    until complete and final performance of all Obligations of Borrower to Bank, including the expiration of any and all applicable preference periods under United States Bankruptcy laws, during which period(s) payments on the Obligations may be required to be returned to the payor thereof, or any trustee or other representative.

3. **Direct Liability or Obligations.** Regardless of any demand from Guarantor, if any, Bank shall not be bound to seek payment from or exhaust its recourse, in whole or in part, against the Borrower, other Guarantors, if any, or any Other Obligor(s), or upon the Collateral Security, before being entitled to payment from Guarantor hereunder.

4. **Right of Setoff.** Bank shall have the right of setoff with respect to deposits and credits in favor of Guarantor as it has with respect to deposits and credits of Borrower.

5. **Bank Action or Inaction.** Bank may at any time, in Bank's sole discretion, and without the consent of, or notice to Guarantor, and without affecting Guarantor's liability hereunder:
    (a)    change, alter, modify, renew, continue, increase, refinance, extend and/or accelerate all or any of the Obligations, or any part(s) thereof, including the times for performance (whether or not for longer than any original period) and for change or modify the interest rates, maturities, payments or other terms of the Obligations and for the parties thereto, and/or otherwise make changes of any sort whatsoever in the terms of its documentation with the Borrower or manner of doing business with the Borrower, and/or with Other Obligors, or in any other manner whatsoever;
    (b)    make additional advances against, transfer, amend, restate, substitute, replace, or terminate any existing Obligation and the documentation therefore;
    (c)    sell, exchange, release, impair, substitute, modify, adjust, or surrender any of the Collateral Security;
    (d)    take or not take any action as to any or all of the Collateral Security, apply the proceeds of any Collateral Security sale against any of the Obligations in any order or sequence, or as it deems best; or make any election under Section 1111 (b)(2) of the United States Bankruptcy Code; or establish the priority of any Collateral Security;
    (e)    grant adjustments, forbearance, or indulgences to settle or compromise with, or sue or not sue any Borrower, or any other Guarantor, or Other Obligor as to any or all of the Obligations, and/or subordinate the same or any part thereof to any other obligations or release or refuse to enforce same; and/or
    (f)    apply all monies received from Borrower or Other Obligors as it deems best.

6. **No Subrogation.** No payment by Guarantor or other satisfaction of Guarantor's liabilities hereunder shall entitle Guarantor to any payment from Borrower, from the proceeds of the property of Borrower or from any Collateral Security, and Guarantor relinquishes all of Guarantor's present and future claims, rights and remedies against Borrower, including, but not limited to, the right of contribution, reimbursement, indemnification, subrogation, exoneration, and any right to participate in any claim or remedy the Bank may have against the Borrower, or the Collateral Security, whether such claim or remedy arises in equity, under contract, or in law.

7. **Waivers.** Guarantor expressly waives TRIAL BY JURY per Section 22 and also waives:
    (a)    acceptance and notice of the acceptance of this Guaranty;
    (b)    diligence, presentment and demand for payment of any of the Obligations or under this Guaranty;
    (c)    protest, notice of protest, notice of dishonor and/or notice of nonpayment, acceleration of default of or to Guarantor or to any Other Obligor;
    (d)    discharge under Section 3-605 of the Uniform Commercial Code, any amendments thereto, and any and all other defenses based on suretyship or impairment of collateral;
    (e)    filings of claims or proofs of claim with any court as to which Borrower or any Other Obligor is subject;
    (f)    the failure of other persons to sign a guaranty, or any documentation associated with the Obligations;
    (g)    notice of any adverse change in Borrower's financial condition or of any other fact, if any, which may increase Guarantor's risk; and/or notice of the extension of credit from time to time by Bank to Borrower, the creation, existence, or acquisition of any Obligations hereby guaranteed, and of notice of the amount of Obligations of Borrower to Bank from time to time.
Guarantor further waives any and all defenses, claims and discharges of Borrower, or of any Other Obligor, pertaining to the Obligations or Collateral Security, except the defense of discharge by payment in full, and Guarantor will not assert, plead or enforce against Bank any defense of waiver, consideration, breach of warranty, lender liability, accord and satisfaction, novation, release, res judicata, statute of frauds, statute of limitations, fraud, incapacity, minority, usury, defense based upon manner of Collateral Security disposition, homestead exemption, valuation, stay or moratorium law, or unenforceability, which may be available to Guarantor or any Other Obligor.

8. **Borrower's Financial Condition.** Guarantor is aware of the financial condition of Borrower and delivers this Guaranty based solely upon independent investigation and not upon any representation of Bank. Guarantor assumes responsibility for obtaining any initial current, ongoing, or additional information concerning Borrower's financial condition in Guarantor may deem necessary, and Guarantor is not relying upon, nor expecting Bank to furnish Guarantor with any information concerning Borrower's financial condition. Guarantor hereby knowingly accepts the full range of risks encompassed within a contract of guaranty, including the possibility that Borrower will contract additional Obligations for which Guarantor may be liable hereunder after Borrower's financial condition or ability to pay has deteriorated.

9. **Guarantor's Financial Condition.** Guarantor covenants that during the time this Guaranty is in effect, there will be no material adverse change in first obtaining Bank's written consent therefor. Guarantor's financial status, and Guarantor will not sell, mortgage, pledge or other wise convey or transfer any material portion of Guarantor's property, without

EXHIBIT
C-2

 

10. **Subordination.** Guarantor agrees that all of the present and future indebtedness of Borrower to Guarantor, if any, shall be and is hereby subordinated to Bank.

11. **Legal Rates of Interest.** Nothing contained herein shall be construed to authorize Bank to charge or collect from Borrower or Guarantor interest that is not yet accrued, is unearned or subject to rebate, or is otherwise not entitled to be collected by Bank under applicable law. To the extent that any performance of this Guaranty would violate any applicable usury statute or other applicable law, the obligation to be fulfilled by Guarantor shall be reduced to the limit legally permitted, so that this Guaranty shall not require any performance in excess of the limit legally permitted, but such Obligation shall be fulfilled to the limit of the legal validity. Any interest paid hereunder for a Borrower who is a corporation or partnership shall be contracted for by said corporation or partnership as Borrower, in accordance with applicable law as to interest rates that Mississippi corporations and/or partnerships may legally contract.

12. **Assignments.** Bank may assign its rights under this Guaranty without Guarantor's consent, and any such assignee shall have the same rights and remedies as if originally named herein.

13. **Breach by Guarantor.** In the event of any breach by Guarantor of any provision hereof, the liability of Guarantor hereunder, regardless of the term(s) of the Obligations with Borrower shall, at Bank's option, be deemed to have matured, and Bank may take any action necessary to enforce this Guaranty.

14. **No Waiver of Rights.** No delay or failure on the part of Bank in exercising any right hereunder shall operate as a waiver of such rights, and any notice or lack of notice on Guarantor shall not be a waiver of the right of Bank to take further action, with or without notice.

15. **Cumulative Remedies.** The rights and remedies of Bank hereunder are cumulative and not exclusive of any other rights or remedies provided by law.

16. **Effect of Other Guaranties.** This Guaranty does not supersede or cancel any other guaranties given by Guarantor, or any other Guarantor on behalf of Borrower, but to the contrary shall be in addition thereto.

17. **Reference to Guarantor/Binding Effect.** If more than one Guarantor guarantees the Obligations, each and every such guaranty shall be the joint and several undertaking of all such Guarantors. Each reference to Guarantor in any documents associated with Obligations or in any Guaranty shall be construed in the singular or plural as the context may require and shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of any Guarantor, all of whom shall be bound for the full payment of the entire amount guaranteed hereby, and with said Borrower for the payment of the Obligations as if the same were due or owing by Guarantor as a party thereto, whether furnished to or executed by Guarantor or not, or whether executed contemporaneously with this Guaranty or not.

18. **Governing Law.** This Guaranty shall be governed by the laws of the State of Mississippi _____, without reference to its conflicts of laws principles. If Bank brings any action hereunder in any courts, state or federal, in Mississippi        Guarantor consents to and acknowledges personal jurisdiction over Guarantor by such court, and waives any objection to venue in such court.

19. **Severability.** If any part of this Guaranty is found invalid, such provision shall be inapplicable and deemed omitted, with the remainder hereof not invalidated thereby, and still given full force and effect.

20. **Circumstances of Execution/Professional Advise Availability.** Guarantor confirms to Bank that Guarantor has either actually consulted or has had the ability to consult, or has knowingly chosen not to consult with an attorney of Guarantor's own choosing prior to execution of this Guaranty, therefore Guarantor fully understands and/or fully assumes total responsibility for the legal consequences of executing this Guaranty, that Guarantor has read this Guaranty in full, and understands the terms and conditions hereof, having not relied upon any representations of Bank as to the nature, terms or effect of this Guaranty.

21. **Entire Contract.** This Guaranty expresses the entire understanding of the parties with respect to the subject matter hereof and may not be waived or varied orally.

22. **Waiver of Trial by Jury.** GUARANTOR AND BANK WAIVE ANY RIGHT OF TRIAL BY JURY IN ANY ACTION BY BANK OR BY GUARANTOR IN ANY WAY CONNECTED WITH THIS GUARANTY, THE OBLIGATION EVIDENCED HEREBY, INCLUDING THOSE OF BORROWER, UNDER OR ARISING FROM ANY OTHER LOAN DOCUMENTS, THE TRANSACTION(S) RELATED HERETO, OR THE DEBTOR-CREDITOR RELATIONSHIP CREATED HEREBY.

---

### NOTICE TO GUARANTOR

You are being asked to guarantee this debt, which are called "Obligations" in this Guaranty. This includes all future debts of the Borrower, as well. Think carefully before you sign this Guaranty. If the Borrower does not pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the Borrower does not pay. You may have to pay late fees or collection costs. The creditor (Bank) can collect this debt from you without first trying to collect from the Borrower. This creditor can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

---

IN WITNESS WHEREOF, Guarantor has executed and delivered this guaranty on this the_____ day of_____,

Guarantor is a(n) Individual

By: _[signature]_                          By: _____

By: _____                    By: _____

**BancorpSouth**

## UNCONDITIONAL AND CONTINUING GUARANTY (the "GUARANTY")

BY: C E FRAZIER _____ (hereinafter the "GUARANTOR")

For good and valuable consideration, the receipt of which is hereby acknowledged, and to induce BANCORPSOUTH BANK, a Mississippi banking corporation, its successors, participants, transferees, and assigns, (the "Bank") to extend or continue to extend credit to and/or otherwise acquire Obligations owing by JABS RIDGE GROUP LLC _____ (the "Borrower"), and as a condition precedent thereto, and for the benefit to Guarantor from such and its successors and assigns, hears and legal representatives of the accommodation, Guarantor hereby agrees as follows:

1. Guaranty. Guarantor, regardless of any percentage of ownership or interest in Borrower by Guarantor, if any, hereby absolutely, continually, irrevocably and unconditionally guarantees to Bank the full and prompt payment when due, whether at maturity, by acceleration, or otherwise (check appropriate provision):
[X] the full amount of all, or, [ ] to the amount of _____ ( _____ ) Dollars,
of the indebtedness, liabilities and obligations of Borrower to Bank of every kind and nature, whether absolute or contingent, continuing or not, due or to become due, primary or secondary, now existing or hereafter arising, secured or unsecured created directly or acquired indirectly, and however evidenced by any instrument(s) that create(s) or constitute(s) obligation(s) of Borrower to Bank, AND IN ADDITION, all interest thereon and any fees, costs, and expenses or other amounts provided for under the documentation of such obligations, any renewals, extensions, modifications, and/or refinancings thereof, and all reasonable fees, costs, and expenses of Bank's, incurred in connection with any of the Obligations and for the enforcement of this Guaranty, and any post-bankruptcy petition interest and attorney's fees and any other amounts which Borrower is prohibited or discharged from paying, or which do not otherwise accrue as part of the Obligations due to Borrower's discharge (all hereinafter the "Obligations").

Nothing in this Guaranty is intended to require nor should it be construed to require the signature of any Borrower, if any, in violation of Regulation B, 12 CFR Part 202.7 in connection with this or any other indebtedness or Obligations of Borrower to Bank.

If limited to a stated amount above, Guarantor agrees:
   (a)   that any payment made by Guarantor shall only be effective to reduce the stated limit of liability if accompanied by a written transmittal document, received by Bank, advising that such payment is made under this Guaranty for such purpose; and
   (b)   that Bank may create, renew, refinance, extend, modify or continue any of the Obligations in excess of said limit, and may apply any sums received on the Obligations from any other source to payment of the excess, without reducing the liability of Guarantor hereunder.

2. Unconditional Guaranty. (a) The liability of Guarantor is primary, absolute, unconditional, continuing, complete and irrevocable, and shall not be discharged except by complete and final performance of the Obligations and no act need occur to establish Guarantor's liability hereunder, irrespective of, but not limited to:
   (i)    the validity or enforceability of the Obligations or of any agreement of Borrower or any person(s) secondarily or otherwise liable for any of the Obligations (hereinafter "Other Obligor(s)"), or any other device providing Collateral Security for payment of the Obligations, including the right of setoff against any deposits or credits (hereinafter the "Collateral Security";
   (ii)   the absence of, delay in, or timing of any action by Bank to enforce or exhaust its remedies under or against the Obligations and/or Collateral Security;
   (iii)  the waiver or consent by Bank with respect to any provision in the documentation of the Obligations or the Collateral Security;
   (iv)   any action to seek or enforce a judgement against Borrower or any Other Obligor(s);
   (v)    any interruptions in the business relations of Borrower with Bank, or whether the Obligations are assumed by or refinanced for any subsequent borrower;
   (vi)   any failure to obtain, properly perfect, protect or insure, or any impairment, deterioration, waste, or loss of any Collateral Security, regardless of the cause;
   (vii)  any other circumstance which might, absent the unconditional and continuing nature of this Guaranty, constitute a defense of a Guarantor.

   (b)   The liability of Guarantor hereunder shall not be extinguished:
   (i)    with respect to any amount, regardless of when or by whom paid, which is required to be returned to such Borrower or any trustee or receiver, by reason of the bankruptcy, insolvency, dissolution, or death of such Borrower, or for any other reason, all as though such amount had never been paid;
   (ii)   even though Borrower or Other Obligor has any such obligation discharged in bankruptcy or otherwise discharged by law;
   (iii)  until complete and final performance of all Obligations of Borrower to Bank, including the expiration of any and all applicable preference periods under United States Bankruptcy law, during which period(s) payments on the Obligations may be required to be returned to the payor thereof, or any trustee or other representative.

3. Direct Liability for Obligations. Regardless of any demand from Guarantor, if any, Bank shall not be bound to seek payment from or exhaust its recourse, in whole or in part, against the Borrower, other Guarantors, if any, or any Other Obligor(s), or upon the Collateral Security, before being entitled to payment from Guarantor hereunder.

4. Right of Setoff. Bank shall have the right of setoff with respect to deposits and credits in favor of Guarantor as it has with respect to deposits and credits of Borrower.

5. Bank Action or Inaction. Bank may at any time, in Bank's sole discretion, and without the consent of, or notice to Guarantor, and without affecting Guarantor's liability hereunder:
   (a)   change, alter, modify, renew, continue, increase, refinance, extend and/or accelerate all or any of the Obligations, or any part(s) thereof, including the times for performance (whether or not for longer than any original period) and/or change or modify the interest rates, maturities, payments or other terms of an Obligations and/or for any part(s) thereof, and/or otherwise make change of any sort whatsoever in the terms of its documentation with the Borrower or manner of doing business with the Borrower, and/or with Other Obligors, or in any other manner whatsoever;
   (b)   make additional advances against, transfer, amend, restate, substitute, replace, or terminate any existing Obligation and the documentation therefore;
   (c)   sell, exchange, release, impair, substitute, modify, adjust, or surrender any of the Collateral Security;
   (d)   take or not take any action so to any or all of the Obligations and/or all of the Collateral Security, apply the proceeds of any Collateral Security sale against any of the Obligations in any order or sequence, or as it deems best; or make any election under Section 1111 (b)(2) of the United States Bankruptcy Code; or establish the priority of any Collateral Security;
   (e)   grant adjustments, forbearances, or indulgences to settle or compromise with, or sue or not sue any Borrower, or any other Guarantor, or Other Obligor as to any or all of the Obligations, and/or subordinate the same or any part thereof to any other obligations or release or refuse to enforce same; and/or
   (f)   apply all monies received from Borrower or Other Obligors as it deems best.

6. No Subrogation. Any repayment by Guarantor or other satisfaction of Guarantor's liabilities hereunder shall entitle Guarantor to any payment from Borrower, from the proceeds of the property of Borrower or from any Collateral Security, and Guarantor relinquishes all of Guarantor's present and future claims, rights and remedies against Borrower, including,but not limited to, the right of contribution, reimbursement, indemnification, subrogation, exoneration, and right to participate in any claim or remedy the Bank may have against the Borrower, or the Collateral Security, whether such claim or remedy arises in equity, under contract, or in law.

7. Waivers. Guarantor expressly waives TRIAL BY JURY per Section 22 and also waives:
   (a)   acceptance and notice of the acceptance of this Guaranty;
   (b)   diligence, presentment and demand for payment of any of the Obligations or under this Guaranty;
   (c)   protest, notice of protest, notice of dishonor and/or notice of nonpayment, acceleration of default of or to Guarantor, any Other Obligor; or impairment of collateral;
   (d)   discharge under Section 3-605 of the Uniform Commercial Code, any amendments thereto, and any and all other defenses based on suretyship;
   (e)   filing of claims or proofs of claim with any court as to which Borrower or any Other Obligor is subject;
   (f)   the failure of other persons to sign a guaranty, or any documentation associated with the Obligations;
   (g)   notice of any adverse change in Borrower's financial condition or of any other fact, if any, which may increase Guarantor's risk; and/or
   (h)   notice of the extension of credit from time to time by Bank to Borrower, the creation, existence, or acquisition of any Obligations hereby guaranteed, and of notice of the amount of Obligations of Borrower to Bank from time to time.
Guarantor further waives any and all defenses, claims and discharges of Borrower, or any Other Obligor, pertaining to the Obligations or Collateral Security, except the defense of discharge by payment in full, and Guarantor will not assert, plead or enforce against Bank any defense of waiver, failure of consideration, breach of warranty, lender liability, accord and satisfaction, novation, release, res judicata, statue of frauds, statute of limitations, fraud, incapacity, minority, usury, defense based upon election of remedies by Bank, defense of usury, and any other Collateral Security disposition, homestead exemption, valuation, stay or moratorium law, or unenforceability, which may be available to Borrower or any Other Obligor.

8. Borrower's Financial Condition. Guarantor is aware of the financial condition of Borrower and delivers this Guaranty based solely upon independent investigation and not upon any representation of Bank. Guarantor assumes responsibility for obtaining any initial current, ongoing, or additional information concerning Borrower's financial condition. As Guarantor may deem necessary, and Guarantor is not relying upon, nor expecting Bank to furnish Guarantor with any information concerning Borrower's financial condition. Guarantor hereby knowingly accepts the full range of risks encompassed within a contract of Guaranty, including the possibility that Borrower will contract additional Obligations for which Guarantor may be liable hereunder after Borrower's financial condition or ability to pay has deteriorated.

9. Guarantor's Financial Condition. Guarantor covenants that during the time this Guaranty is in effect, there will be no material adverse change in Guarantor's financial status, and Guarantor will not sell, mortgage, pledge or other wise convey or transfer any material portion of Guarantor's property, without first obtaining Bank's written consent therefor.

EXHIBIT
C-3

 

10. **Subordination.** Guarantor agrees that all of the present and future indebtedness of Borrower to Guarantor, if any, shall be and is hereby subordinated to Bank.

11. **Legal Rates of Interest.** Nothing contained herein shall be construed to authorize Bank to charge or collect from Borrower or Guarantor interest that is not yet accrued, is unearned or subject to rebate, or is otherwise not entitled to be collected by Bank under applicable law. To the extent that any performance of this Guaranty would violate any applicable usury statute or other applicable law, the obligation to be fulfilled by Guarantor shall be reduced to the limit legally permitted, so that this Guaranty shall not require any performance in excess of the limit legally permitted, but such Obligation shall be fulfilled to the limit of the legal validity. Any interest paid hereunder for a Borrower who is a corporation or partnership shall have been contracted for by said corporation or partnership as Borrower, in accordance with applicable law as to interest rates that Mississippi corporations and/or partnerships may legally contract.

12. **Assignments.** Bank may assign its rights under this Guaranty without Guarantor's consent, and any such assignee shall have the same rights and remedies as if originally named herein.

13. **Breach by Guarantor.** In the event of any breach by Guarantor of any provision hereof, the liability of Guarantor hereunder, regardless of the term(s) of the Obligations with Borrower shall, at Bank's option, be deemed to have matured, and Bank may take any action necessary to enforce this Guaranty.

14. **No Waiver of Rights.** No delay or failure on the part of Bank in exercising any right hereunder shall operate as a waiver of such rights, and any notice or lack of notice on Guarantor shall not be a waiver of the rights of Bank to take further action, with or without notice.

15. **Cumulative Remedies.** The rights and remedies of Bank hereunder are cumulative and not exclusive of any other rights or remedies provided by law.

16. **Effect of Other Guaranties.** This Guaranty does not supersede or cancel any other guaranties given by Guarantor, or any other Guarantor on behalf of Borrower, but to the contrary shall be in addition thereto.

17. **Reference to Guarantor/Binding Effect.** If more than one Guarantor guarantees the Obligations, each and every such guaranty shall be the joint and several undertaking of all such Guarantors. Each reference to Guarantor in any documents associated with Obligations or in any Guaranty shall be construed in the singular or plural as the context may require and shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of any Guarantor, all of whom shall be bound for the full payment of the entire amount guaranteed hereby, and with said Borrower for the payment of the Obligations as if the same were due or owing by Guarantor as a party thereto, whether furnished to or executed by Guarantor or not, or whether executed contemporaneously with this Guaranty or not.

18. **Governing Law.** This Guaranty shall be governed by the laws of the State of Mississippi _____, without reference to its conflicts of laws principles. If Bank brings any action hereunder in any courts, state or federal, in Mississippi Guarantor consents to and acknowledges personal jurisdiction over Guarantor by such court, and waives any objection to venue in such court.

19. **Severability.** If any part of this Guaranty is found invalid, such provision shall be inapplicable and deemed omitted, with the remainder hereof not invalidated thereby, and still given full force and effect.

20. **Circumstances of Execution/Professional Advice Availability.** Guarantor confirms to Bank that Guarantor has either actually consulted or has had the ability to consult, or has knowingly chosen not to consult with an attorney of Guarantor's own choosing prior to execution of this Guaranty, therefore Guarantor fully understands and/or fully assumes total responsibility for the legal consequences of executing this Guaranty, that Guarantor has read this Guaranty in full, and understands the terms and conditions hereof, having not relied upon any representations of Bank as to the nature, terms or effect of this Guaranty.

21. **Entire Contract.** This Guaranty expresses the entire understanding of the parties with respect to the subject matter hereof and may not be waived or varied orally.

22. **Waiver of Trial by Jury.** GUARANTOR AND BANK WAIVE ANY RIGHT OF TRIAL BY JURY IN ANY ACTION BY BANK OR BY GUARANTOR IN ANY WAY CONNECTED WITH THIS GUARANTY, THE OBLIGATION EVIDENCED HEREBY, INCLUDING THOSE OF BORROWER, UNDER OR ARISING FROM ANY OTHER LOAN DOCUMENTS, THE TRANSACTION(S) RELATED HERETO, OR THE DEBTOR-CREDITOR RELATIONSHIP CREATED HEREBY.

---

### NOTICE TO GUARANTOR

You are being asked to guarantee this debt, which are called "Obligations" in this Guaranty. This includes all future debts of the Borrower, as well. Think carefully before you sign this Guaranty. If the Borrower does not pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the Borrower does not pay. You may have to pay late fees or collection costs. The creditor (Bank) can collect this debt from you without first trying to collect from the Borrower. This creditor can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

---

IN WITNESS WHEREOF, Guarantor has executed and delivered this guaranty on this the _____ day of _____, 

Guarantor is a(n) **Individual**

By: _____          By: _____

By: _____          By: _____

  

**BancorpSouth**

## UNCONDITIONAL AND CONTINUING GUARANTY (the "GUARANTY")

BY: SHELBY K BRANTLEY _____ (hereinafter the "GUARANTOR")

For good and valuable consideration, the receipt of which is hereby acknowledged, and to induce BANCORPSOUTH BANK, a Mississippi banking corporation, its successors, participants, transferees, and assigns, (the "Bank") to extend or continue to extend credit to and/or otherwise acquire Obligations owing by VAN BUREN GROUP LLC _____ and its successors and assigns, heirs and legal representatives (the "Borrower"), and as a condition precedent thereto, and for the benefit to Guarantor from such accommodation, Guarantor hereby agrees as follows:

1. **Guaranty.** Guarantor, regardless of any percentage of ownership or interest in Borrower by Guarantor, if any, hereby absolutely, continually, irrevocably and unconditionally guarantees to Bank the full and prompt payment when due, whether at maturity, by acceleration, or otherwise (check appropriate provision):
[X] the full amount of all, or, [ ] to the amount of _____ ($_____) Dollars, of the indebtedness, liabilities and obligations of Borrower to Bank of every kind and nature, whether absolute or contingent, continuing or not, due or to become due, primary or secondary, now existing or hereafter arising, secured or unsecured created directly or acquired indirectly, and however evidenced by any instrument(s) that create(s) or constitute(s) obligation(s) of Borrower to Bank, AND IN ADDITION, all interest thereon and any fees, costs, and expenses or other amounts provided for under the documentation of such obligations, any renewals, extensions, modifications, and for refinancings thereof, and all reasonable fees, costs, and expenses of Bank's counsel, incurred in connection with any of the Obligations and for the enforcement of this Guaranty, and any post-bankruptcy petition interest and attorney's fees and any other amounts which Borrower is prohibited or discharged from paying, or which do not otherwise accrue as part of the Obligations due to Borrower's discharge (all hereinafter the "Obligations").

Nothing in this Guaranty is intended to require nor should it be construed to require the signature of the spouse of any Borrower, if any, in violation of Regulation B, 12 CFR Part 202.7 in connection with oils or any other indebtedness or Obligations of Borrower to Bank.

If limited to a stated amount above, Guarantor agrees:
(a) that any payment made by Guarantor shall only be effective to reduce the stated limit of liability if accompanied by a written transmittal document, received by Bank, advising that such payment is made under this Guaranty for such purpose; and
(b) that Bank may extend, renew, refinance, extend, modify or continue any of the Obligations in excess of said limit, and may apply any sums received on the Obligations from any other source to payment of the excess, without reducing the liability of Guarantor hereunder.

2. **Unconditional Guaranty.** (a) The liability of Guarantor is primary, absolute, unconditional, continuing, complete and irrevocable, and will not be discharged except by complete and final performance of the Obligations and no act need occur to establish Guarantor's liability hereunder, irrespective of, but not limited to:
(i) the validity or enforceability of the Obligations or of any security interest, mortgage or ledge granted by Borrower or by any person(s) secondarily or other wise liable for any of the Obligations (hereinafter "Other Obligor(s)"), or any other device providing Collateral Security for payment of the Obligations, including the right of setoff against any deposits or credits (hereinafter the "Collateral Security");
(ii) the absence of, delay in, or timing of any action by Bank to enforce or exhaust its remedies under or against the Obligations and/or the Collateral Security;
(iii) the waiver or consent by Bank with respect to any provision in the documentation of the Obligations or the Collateral Security;
(iv) any action to seek or enforce a judgement against Borrower or any Other Obligor(s);
(v) any interruptions in the business relations of Borrower with Bank, or whether the Obligations are assumed by or refinanced for any subsequent borrower ;
(vi) any failure to obtain, properly perfect, protect or insure, or any impairment, deterioration, waste, or loss of any Collateral Security, regardless of the cause;
(viii) any other circumstance which might, absent the unconditional and continuing nature of this Guaranty, constitute a defense of a Guarantor.

(b) The liability of Guarantor hereunder shall not be extinguished:
(i) with respect to any amount, regardless of when or by whom paid, which is required to be returned to such Borrower or any trustee or receiver, by reason of the bankruptcy, insolvency, dissolution, or death of such Borrower, or for any other reason, all as though such amount had never been paid;
(ii) even though Borrower or Other Obligor has any such obligation discharged in bankruptcy or otherwise discharged by law;
(iii) until complete and final performance of all Obligations of Borrower to Bank, including the expiration of any and all applicable preference periods under United States Bankruptcy laws, during which period(s) payments on the Obligations may be required to be returned to the payor thereof, or any trustee or other representative.

3. **Direct Liability for Obligations.** Regardless of any demand from Guarantor, if any, Bank shall not be bound to seek payment from or exhaust its recourse, in whole or in part, against the Borrower, other Guarantors, if any, or any Other Obligor(s), or upon the Collateral Security, before being entitled to payment from Guarantor hereunder.

4. **Right of Setoff.** Bank shall have the right of setoff with respect to deposits and credits in favor of Guarantor as it has with respect to deposits and credits of Borrower.

5. **Bank Action or Inaction.** Bank at any time, in Bank's sole discretion, and without the consent of, or notice to Guarantor, and without affecting Guarantor's liability hereunder:
(a) change, alter, modify, renew, continue, increase, refinance, extend and/or accelerate all or any of the Obligations, or any part(s) thereof, including the times for performance (whether or not for longer than any original period) and /or change or modify the interest rate, maturities, payments or other terms of an Obligations and for the parties thereto, and/or otherwise make changes of any sort whatsoever in the terms of documentation with the Borrower or manner of doing business with the Borrower, and/or with Other Obligors, or in any other manner whatsoever;
(b) make additional advances against, transfer, amend, restate, substitute, replace, or terminate any existing Obligation and the documentation therefore;
(c) sell, exchange, release, impair, substitute, modify, adjust, or surrender any of the Collateral Security;
(d) take or not take any action as to any or all of the Collateral Security, apply the proceeds of any Collateral Security sale against any or all of the Obligations in any order or sequence, or as it deems vest; or make any election under Section 1111 (b)(2) of the United States Bankruptcy Code; or establish the priority of any Collateral Security;
(e) grant adjustments, forbearances, or indulgences to settle or compromise with, or sue or not sue any Borrower, or any Other Guarantor, or Other Obligor as to any or all of the Obligations, and/or subordinate the same or any part thereof to any other obligations or release or refuse to enforce same; and/or
(f) apply all monies received from Borrower or Other Obligors as it deems best.

6. **No Subrogation.** No payment by Guarantor or other satisfaction of Guarantor's liabilities hereunder shall entitle Guarantor to any payment from Borrower, from the proceeds of the property of Borrower or from any Collateral Security, and Guarantor relinquishes all of Guarantor's present and future claims, rights and remedies against Borrower, including, but not limited to, the right of contribution, reimbursement, indemnification, subrogation, exoneration, and any right to participate in any claim or remedy the Bank may have against the Borrower, or the Collateral Security, whether such claim or remedy arises in equity, under contract, or in law.

7. **Waivers.** Guarantor expressly waives TRIAL BY JURY per Section 22 and also waives:
(a) acceptance and notice of the acceptance of this Guaranty;
(b) diligence, presentment and demand for payment of any of the Obligations or under this Guaranty;
(c) protest, notice of protest, notice of dishonor and/or notice of nonpayment, acceleration of default of or to Guarantor or to any Other Obligor;
(d) discharge under Section 3-605 of the Uniform Commercial Code, any amendments thereto, and any and all other defenses based on suretyship or impairment of collateral;
(e) filings of claims or proofs of claim with any court as to which Borrower or any Other Obligor is subject;
(f) the failure of other persons to sign a guaranty, or any documentation associated with the Obligations;
(g) notice of any adverse change in Borrower's financial condition or any other fact, if any, which may increase Guarantor's risk; and/or
(h) notice of the execution of credit from time to time by Bank to Borrower , the creation, existence, or acquisition of any Obligations hereby.
Guarantor further waives any and all defenses, claims and discharges of Borrower, or of any Other Obligor, pertaining to the Obligations or Collateral Security, except for the defense of discharge by payment in full, and Guarantor will not assert, plead or enforce against Bank any defense of waiver, failure of consideration, breach of warranty, lender liability, accord and satisfaction, statute of limitations, release, res judicata, statute of frauds, statute of limitations, fraud, incapacity, minority, usury, defense based upon manner of Collateral Security disposition, homestead exemption, valuation, stay or moratorium law, or unenforceability, which may be available to Borrower or any Other Obligor.

8. **Borrower's Financial Condition.** Guarantor is aware of the financial condition of Borrower and delivers this Guaranty based solely upon independent investigation and not upon any representation of Bank. Guarantor assumes responsibility for obtaining any initial current, ongoing, or additional information concerning Borrower's financial condition as Guarantor may deem necessary, and Guarantor is not relying upon, nor expecting Bank to furnish Guarantor with any information concerning Borrower's financial condition. Guarantor hereby knowingly accepts the full range of risks encompassed within a contract of guaranty, including the possibility that Borrower will contract additional Obligations for which Guarantor may be liable hereunder after Borrower's financial condition or ability to pay has deteriorated.

9. **Guarantor's Financial Condition.** Guarantor covenants that during the time this Guaranty is in effect, there will be no material adverse change in Guarantor's financial status, and Guarantor will not sell, mortgage, pledge or other wise convey or transfer any material portion of Guarantor's property, without first obtaining Bank's written consent therefor.

IndGuar.pg1   03-31-20004 DFS v 7.2 09/04/2001

**EXHIBIT**
C-4



10. **Subordination.** Guarantor agrees that all of the present and future indebtedness of Borrower to Guarantor, if any, shall be and is hereby subordinated to Bank.

11. **Legal Rates of Interest.** Nothing contained herein shall be construed to authorize Bank to charge or collect from Borrower or Guarantor interest that is not yet accrued, is unearned or subject to rebate, or is otherwise not entitled to be collected by Bank under applicable law. To the extent that any performance of this Guaranty would violate any applicable not entitled to be collected by Bank under applicable law, the obligation to be fulfilled by Guarantor shall be reduced to the limit legally permitted, so that this Guaranty shall not require any performance in excess of the limit legally permitted, but such Obligation shall be fulfilled to the limit of the legal validity. Any interest paid hereunder for a Borrower who is a corporation or partnership shall have been contracted for by said corporation or partnership as Borrower, in accordance with applicable law as to interest rates that Mississippi corporations and/or partnerships may legally contract.

12. **Assignments.** Bank may assign its rights under this Guarantor without Guarantor's consent, and any such assignee shall have the same rights and remedies as if originally named herein.

13. **Breach of Guarantor.** In the event of any breach by Guarantor of any provision hereof, the liability of Guarantor hereunder, regardless of the term(s) of the Obligations with Borrower shall, at Bank's option, be deemed to have matured, and Bank may take any action necessary to enforce this Guaranty.

14. **No Waiver of Rights.** No delay or failure on the part of Bank in exercising any right hereunder shall operate as a waiver of such rights, and any notice or lack of notice on Guarantor shall not be a waiver of the right of Bank to take further action, with or without notice.

15. **Cumulative Remedies.** The rights and remedies of Bank hereunder are cumulative and not exclusive of any other rights or remedies provided by law.

16. **Effect of Other Guaranties.** This Guaranty does not supersede or cancel any other guaranty given by Guarantor, or any other Guarantor on behalf of Borrower, but to the contrary shall be in addition thereto.

17. **Reference to Guarantor/Binding Effect.** If more than one Guarantor guarantees the Obligations, each and every such guaranty shall be the joint and several undertaking of all such Guarantors. Each reference to Guarantor in any documents associated with Obligations or in any Guaranty shall be construed in the singular or plural as the context may require and shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of any Guarantor, all of whom shall be bound for the full payment of the entire amount guaranteed hereby, and with said Borrower for the payment of the Obligations as if the same were due or owing by Guarantor as a party thereto, whether furnished to or executed by Guarantor or not, or whether executed contemporaneously with this Guaranty or not.

18. **Governing Law.** This Guaranty shall be governed by the laws of the State of Mississippi, without reference to its conflict of laws principles. If Bank brings any action hereunder in any courts, state or federal, in Mississippi Guarantor consents to and acknowledges personal jurisdiction over Guarantor by such court, and waives any objection to venue in such court.

19. **Severability.** If any part of this Guaranty is found invalid, such provision shall be inapplicable and deemed omitted, with the remainder hereof not invalidated thereby, and still given full force and effect.

20. **Circumstances of Executive/Professional Advise Availability.** Guarantor confirms to Bank that Guarantor has either actually consulted or has had the ability to consult, or has knowingly chosen not to consult with an attorney of Guarantor's own choosing prior to execution of this Guaranty, therefore Guarantor fully understands and/or fully assumes total responsibility for the legal consequences of executing this Guaranty, that Guarantor has read this Guaranty in full, and understands the terms and conditions hereof, having not relied upon any representations of Bank as to the nature, terms or effect of this Guaranty.

21. **Entire Contract.** This Guaranty expresses the entire understanding of the parties with respect to the subject matter hereof and may not be waived or varied orally.

22. **Waiver of Trial by Jury.** GUARANTOR AND BANK WAIVE ANY RIGHT OF TRIAL BY JURY IN ANY ACTION BY BANK OR BY GUARANTOR IN ANY WAY CONNECTED WITH THIS GUARANTY, THE OBLIGATION EVIDENCED HEREBY, INCLUDING THOSE OF BORROWER, UNDER OR ARISING FROM ANY OTHER LOAN DOCUMENTS, THE TRANSACTION(S) RELATED HERETO, OR THE DEBTOR-CREDITOR RELATIONSHIP CREATED HEREBY.

---

### NOTICE TO GUARANTOR

You are being asked to guarantee this debt, which are called "Obligations" in this Guaranty. This includes all future debts of the Borrower, as well. Think carefully before you sign this Guaranty. If the Borrower does not pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the Borrower does not pay. You may have to pay late fees or collection costs. the creditor (Bank) can collect this debt from you without first trying to collect form the Borrower. This creditor can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

---

IN WITNESS WHEREOF, Guarantor has executed and delivered this guaranty on this the __5TH__ day of __SEPTEMBER__, 2001.

Guarantor is a(n) Individual

By: _____          By: _____

Title: _____          Title: _____


By: _____          By: _____

Title: _____          Title: _____

SEP 06 '01 14:07 FR SS MORRISTOWN                 0013 TO 16012922486        P.02/03
08/05/2001 WED 14:34  FAX 601 292 2486+        BancorpSouth

*Jackson*

## BancorpSouth

## UNCONDITIONAL AND CONTINUING GUARANTY (the "GUARANTY")

BY: ROBERT E CRUMPTON_____ (hereinafter the "GUARANTOR")

For good and valuable consideration, the receipt of which is hereby acknowledged, and to induce BANCORPSOUTH BANK, a Mississippi banking corporation, its successors, participants, its successors, participants, transferees, and assigns, (the "Bank") to extend or continue to extend credit to and/or otherwise acquire Obligations owing by THE BIKER GROUP LLC

and its successors and assigns, heirs and legal representatives (the "Borrower"), and as a condition precedent thereto, and for the benefit of Guarantor from such accommodation, Guarantor hereby agrees as follows:

1. Guaranty. Guarantor, regardless of any percentage of ownership or interest in Borrower by Guarantor, if any, hereby absolutely, irrevocably and unconditionally guaranties to Bank the full and prompt payment when due, whether at maturity, by acceleration, or otherwise (check appropriate provision):

[X] the full amount of all, or, [ ] in the amount of _____ (_____) Dollars,

of the indebtedness, liabilities and obligations of Borrower to Bank of every kind and nature, whether absolute or contingent, continuing or not, due or to become due, primarily or secondarily, now existing or hereafter arising, secured or unsecured created directly or acquired indirectly, and however evidenced by any instrument(s) that create(s) or constitute(s) obligation(s) of Borrower to Bank, AND IN ADDITION, all interest thereon and any fees, costs and expenses or other amount provided for under the documentation of such obligation, any renewals, extensions, modifications, and for redemptions thereof, and all reasonable fees, costs, and expenses of Bank's counsel, incurred in connection with any of the Obligations and for the enforcement of this Guaranty, and any post-bankruptcy petition interest and attorney's fees and any other amounts which Borrower is prohibited or discharged from paying, on which do not otherwise accrue as part of the Obligations due to Borrower's discharge (all hereinafter the "Obligations").

Nothing in this Guaranty is intended to require nor should it be construed to require the signature of the spouse of any Borrower, if any, in violation of Regulation B, 12 CFR Part 202.7 in connection with this or any other indebtedness or Obligation of Borrower to Bank.

If limited to a stated amount above, Guarantor agrees:

(a) that any payment made by Guarantor shall only be effective to reduce the stated limit of liability if accompanied by a written transmittal document, received by Bank, advising that such payment is made under this Guaranty for such purpose; and

(b) that Bank may create, renew, refinance, extend, modify or continue any of the Obligations in excess of said limit, and may apply any sums received on the Obligations from any other source in payment of the excess, without reducing the liability of Guarantor hereunder.

2. Unconditional Guaranty. (a) The liability of Guarantor is primary, absolute, unconditional, continuing, complete and irrevocable, and will not be discharged except by complete and final performance of the Obligations and no set-off need occur to establish Guarantor's liability hereunder, irrespective of, but not limited to:

(i) the validity or enforceability of the Obligations or of any security interest, mortgage or judge granted by Borrower or by any person(s) hereunder, or otherwise liable for any of the Obligations (hereinafter "Other Obligor(s)"), or any other device providing Collateral Security for payment of the Obligations, including the right of Bank to enforce or exhaust its remedies under or against the Collateral Security;

(ii) the absence of, delay in, or failure of any action by Bank to enforce or exhaust its remedies under or against the Obligations and/or the Collateral Security;

(iii) the waiver or consent by Bank with respect to any provision in the documentation of the Obligations or the Collateral Security;

(iv) any action to seek or enforce a judgement against Borrower or any Other Obligor(s);

(v) any interruptions in the business relations of Borrower with Bank, or whether the Obligations are assumed by or released for any subsequent borrower;

(vi) any failure to obtain, properly perfect, protect or insure, or any impairment, deterioration, waste, or loss of any Collateral Security, regardless of the cause;

(vii) any other circumstance which might, absent the unconditional and continuing nature of this Guaranty, constitute a defense of a Guarantor.

(b) The liability of Guarantor hereunder shall not be extinguished:

(i) with respect to any amount, regardless of when or by whom paid, which is required to be returned to such Borrower or any trustee or receiver, by reason of the bankruptcy, insolvency, dissolution, or death of such Borrower, or for any other reason, all as though such amount had never been paid.

(ii) even though Borrower or Other Obligor has any such obligation discharged in bankruptcy or otherwise discharged by law;

(iii) until complete and final performance of all Obligations of Borrower to Bank, including the expiration of any and all applicable preference (which under United States Bankruptcy laws, during which period(s) payments on the Obligations may be required to be returned in the payor thereof, or any trustee or other representative.

3. Direct Liability for Obligations. Regardless of any demand from Guarantor, if any, Bank shall not be bound to seek payment from or exhaust its recourse, in whole or in part, against the Borrower, other Guarantors, if any, or any Other Obligor(s), or upon the Collateral Security, before bank collects in payment from Guarantor hereunder.

4. Right of Setoff. Bank shall have the right of setoff with respect to deposits and credits in favor of Guarantor as it has with respect to deposits and credits of Borrower.

5. Bank Action or Inaction. Bank at any time, in Bank's sole discretion, and without the consent of, or notice to Guarantor, and without affecting Guarantor's liability hereunder:

(a) change, alter, modify, renew, continue, increase, refinance, extend and/or accelerate all or any of the Obligations, or any part(s) thereof, including the time for performance (whether or not for longer than any original period) and for change or modify the interest rates, maturities, payments or other terms of the Obligations and for otherwise make changes of any sort whatsoever in the terms of the documentation with the Borrower or manner of doing business with the Borrower, and/or with Other Obligors, or in any other manner whatsoever;

(b) make additional advances against, transfer, amend, restate, substitute, replace, or terminate any existing Obligation and the documentation therefore;

(c) sell, exchange, release, impair, substitute, modify, adjust, or surrender any of the Collateral Security;

(d) take or not take any action at or with respect to all or any of the Collateral Security and/or enforce any Collateral Security sale against any of the Obligations in any order or sequence, as it it deems wise; or make any election under Section 1111 (b)(2) of the United States Bankruptcy Code; or consent to the priority of any Collateral Security;

(e) grant subordinations, forbearances, or indulgences to settle or compromise with, or not or not sue any Borrower, or any other Guarantor, at its sole discretion, either;

(f) apply all monies received from Borrower or Other Obligors as it deems best.

6. No Subrogation. No payment by Guarantor or other satisfaction of Borrower's liabilities hereunder shall entitle Guarantor to any payment from Borrower, from the proceeds of the property of Borrower or from any Collateral Security, and Guarantor relinquishes all of Guarantor's present and future claims, rights and remedies against Borrower, including, but not limited to, the right of contribution, reimbursement, indemnification, subrogation, exoneration, and any right to participate in any claim or remedy the Bank may have against the Borrower, or the Collateral Security, whether such claim or remedy arises in equity, under contract, or in law.

7. Waivers. Guarantor expressly waives TRIAL BY JURY per Section 22 and also waives:

(a) acceptance and notice of the acceptance of this Guaranty;

(b) diligence, presentment and demand for payment of any of the Obligations or under this Guaranty;

(c) protest, notice or protest, notice of dishonor and/or notice of nonpayment, acceleration of default or or to Guarantor or to any Other Obligor;

(d) discharge under Section 3-605 of the Uniform Commercial Code, any amendments thereto, and any and all other defenses based on suretyship or impairment of collateral;

(e) filings of suits or proof of claim with any court before or in suits between any Borrower or any Other Obligor is subject;

(f) the failure of other persons to sign a guaranty, or any documentation associated with the Obligations;

(g) notice of the existence of credit from time to time to Bank to Borrower, the creation, existence, or acquisition of any Obligations hereby guaranteed, and of notice of an amount of Obligation of Borrower to Bank from time to time.

Guarantor further waives any and all defenses, claims and discharges of Borrower, or of any Other Obligor, pertaining to the Obligations or Collateral Security, except the defense of discharge by payment in full. Guarantor will not assert, plead or enforce against Bank any defense of waiver, release, statute of limitations, res judicata, statute of frauds, statute of limitations, fraud, incapacity, minority, usury, defense based upon or arising of Collateral Security disposition, nonconsent execution, valuation, stay or nonassertion law, or unenforceability which may be available to Borrower or any Other Obligor.

8. Borrower's Financial Condition. Guarantor is aware of the financial condition of Borrower and delivers this Guaranty based solely upon Guarantor's own investigation and not upon any representation of Bank. Guarantor assumes responsibility for situations regarding Borrower's financial condition to Guarantor may deem necessary, and Guarantor is not relying upon any initial current, ongoing, or additional information any information concerning Borrower's financial condition. Guarantor knowingly accepts the full range of risks encompassed within a contract of "guaranty, including the possibility that Borrower will contract additional Obligations for which Guarantor may be liable hereunder after Borrower's financial condition or ability to pay has deteriorated.

9. Guarantor's Financial Condition. Guarantor covenants that during the time this Guaranty is in effect, there will be no material adverse change in Guarantor's financial status, and Guarantor will not sell, mortgage, pledge or otherwise convey or transfer any material portion of Guarantor's property, without first obtaining Bank's written consent therefore.

Released 10-31-2000 GFS v 7.0 Electronic
RFP Pk5 '01 15:37

FAX 292 2486+                  PAGE.02

**EXHIBIT**

**C-5**

SEP 06 '01 14:08 FR SS MORRISTOWN       973 971 0013 TO 16012922486       P.03/03
09/05/2001 WED 14:3?   E 601 292 2486+     BancorpSouth                    @003

10. **Subordination.** Guarantor agrees that all of the present and future indebtedness of Borrower to Guarantor, if any, shall be and is hereby subordinated to Bank.

11. **Legal Rates of Interest.** Nothing contained herein shall be construed to authorize Bank to charge or collect from Borrower or Guarantor interest that is not so accrued, is unearned or subject to refuse, or is otherwise not entitled to be collected by Bank under applicable law. To the extent that any performance of this Guaranty would violate any applicable law entitled to be enforced by Bank under applicable law, the obligation to be fulfilled by Guarantor shall be replaced to the limit legally permitted, so that this Guaranty shall not require any performance in excess of the limit legally permitted, but such Obligation shall be fulfilled to the limit of the legal validity. Any interest paid hereunder for a Borrower who is a corporation or partnership shall have been contracted for by said corporation or partnership as Borrower, in accordance with applicable law so as to interest rates that Mississippi corporations and/or partnerships may legally contract.

12. **Assignment.** Bank may assign its rights under this Guaranty without Guarantor's consent, and any such assignee shall have the same rights and remedies as if originally named herein.

13. **Breach of Guarantor.** In the event of any breach by Guarantor of any provision hereof, the liability of Guarantor hereunder, regardless of the remedy of the Obligations with Borrower shall, at Bank's option, be deemed to have matured, and Bank may take any action necessary to enforce this Guaranty.

14. **No Waiver of Rights.** No delay or failure on the part of Bank in exercising any right hereunder shall operate as a waiver of such rights, and any notice or lack of notice on Guarantor shall not be a waiver of the right of Bank to take further action, with or without notice.

15. **Cumulative Remedies.** The rights and remedies of Bank hereunder are cumulative and not exclusive of any other rights or remedies provided by law.

16. **Effect of Other Guaranties.** This Guaranty does not supersede or cancel any other guaranties given by Guarantor, or any other Guarantor on behalf of Borrower, but to the contrary shall be in addition thereto.

17. **Reference to Guarantor/Binding Effect.** If more than one Guarantor guarantees the Obligations, each and every such and every undertaking of all such Guarantors. Each reference to Guarantor in any documents associated with Obligations or in any Guaranty shall be construed in the singular or plural as the context may require and shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of any Guarantor, all of whom shall be bound for the full payment of the entire amount guaranteed hereby, and with each Borrower for the payment of the Obligations as if the same were due or owing by Guarantor as a party thereto, whether furnished to or executed by Guarantor or not, or whether executed contemporaneously with this Guaranty or not.

18. **Governing Law.** This Guaranty shall be governed by the laws of the State of Mississippi , without reference to its conflict of laws principles. If Bank brings any action hereunder in any courts, state or federal, in Mississippi Guarantor consents to and acknowledges personal jurisdiction over Guarantor by such court, and waives any objection to venue in such court.

19. **Severability.** If any part of this Guaranty is found invalid, such provision shall be inapplicable and deemed omitted, with the remainder hereof not invalidated thereby, and still given full force and effect.

20. **Circumstances of Guaranty/Professional Advice Availability.** Guarantor confirms to Bank that Guarantor has either actually consulted or has had the ability to consult, at his knowingly chosen not to consult with an attorney of Guarantor's own choosing prior to execution of this Guaranty, therefore Guarantor fully understands and/or fully assumes total responsibility for the legal consequences of executing this Guaranty, that Guarantor has read this Guaranty in full, and understands the terms and conditions hereof, having not relied upon any representations of Bank as to the nature, terms or effect of this Guaranty.

21. **Entire Contract.** This Guaranty expresses the entire understanding of the parties with respect to the subject matter hereof and may not be waived or varied orally.

22. **Waiver of Trial by Jury. GUARANTOR AND BANK WAIVE ANY RIGHT OF TRIAL BY JURY IN ANY ACTION BY BANK OR BY GUARANTOR IN ANY WAY CONNECTED WITH THIS GUARANTY, THE OBLIGATION EVIDENCED HEREBY, INCLUDING THOSE OF BORROWER, UNDER OR ARISING FROM ANY OTHER LOAN DOCUMENTS, THE TRANSACTION(S) RELATED HERETO, OR THE DEBTOR-CREDITOR RELATIONSHIP CREATED HEREBY.**

---

### NOTICE TO GUARANTOR

You are being asked to guarantee this debt, which are called "Obligations" in this Guaranty. This includes all future debts of the Borrower, as well. Think carefully before you sign this Guaranty. If the Borrower does not pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the Borrower does not pay. You may have to pay late fees or collection costs. the creditor (Bank) can collect this debt from you without first trying to collect form the Borrower. This creditor can use the same collection methods against you that can be used against the Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

---

IN WITNESS WHEREOF, Guarantor has executed and delivered this guaranty on this the_____ day of_____ _____.

Guarantor is a(n) Individual

By: _____          By: _____

Title: _____          Title: _____

By: _____          By: _____

Title: _____          Title: _____

SEP 05 '01 15:38

601 292 2486+     PAGE.03
** TOTAL PAGE.03 **

IN THE CHANCERY COURT OF LAFAYETTE COUNTY, MISSISSIPPI

BANCORPSOUTH BANK                                                    PLAINTIFF

v.                                                          CAUSE NO.: 2007-504(A)

VAN BUREN GROUP, LLC,
CLAIBORNE FRAZIER, AUSTIN FRAZIER,
C.E. FRAZIER, SHELBY K. BRANTLEY, JR.,
ROBERT CRUMPTON, NORMA S. BOURDEAUX,
LANGSTON OXFORD PROPERTIES, L.P., a
Mississippi Limited Liability Partnership, SUSAN M. BRYAN,
LYNN M. GRENFELL, and JOHN ALBRITON                         DEFENDANTS

*Filed in this office this 24 day of January 2008. SHERRY J. WALL, Chancery Clerk By Betty Chapman D.C.*

## DEFAULT JUDGMENT

This action came on for hearing on the Motion of the Plaintiff for a Default Judgment pursuant Rule 55(b) of the Mississippi Rules of Civil Procedure, and the Defendants, Claiborne Frazier, Austin Frazier and C.E. Frazier, having been served with the Complaint and said Defendants not being infants or unrepresented incompetent people and said Defendants having failed to plead or otherwise defend, and a Default having been duly entered and said Defendants having taken no proceedings since Default was entered;

IT IS THEREFORE ORDERED, AND ADJUDGED and the Court does hereby find and order as follows:

a. The Plaintiff's Motion is meritorious and should be sustained.
b. Plaintiff shall have a final judgment against said Defendants in the amount of $1,214,533.00, which shall constitute $974,748.82 for the principal amount of the debt owed, $189,784.18 in interest owed, and $50,000.00 in attorney fees.
c. Interest shall continue to accrue on this judgment until it is paid in full at the rate of 8.50% per annum, pursuant to the agreement entered into by Defendant.
d. This judgment shall be enrolled on the Judgment Rolls of Lafayette County until such time as it is satisfied.

ORDERED, ADJUDGED, AND DECREED, this the 24 day of Jenny, 2008.

_____
CHANCELLOR

EXHIBIT "D"

SCANNED

STATE OF MISSISSIPPI
LAFAYETTE COUNTY
I, BILL PLUNK, Chancery Clerk of Lafayette
County in said State hereby certify that
the within instrument was filed for record
at 9:35 o'clock AM on the 31
day of Dec, 200 3, and duly recorded
in book _____ on page _____
Given under my hand and seal of office
this 31 day of Dec, A.D. 200 3
BILL PLUNK, Clerk,
By _____ D.C.

## WARRANTY DEED

FOR AND IN CONSIDERATION of the sum of Ten Dollars ($10.00), cash in hand paid; and other good and valuable considerations, the receipt and sufficiency of all of which are hereby acknowledged, the undersigned **VAN BUREN GROUP, LLC, a Mississippi limited liability company,** does hereby sell, convey and warrant unto **LYNN M. GRENFELL,** the following described land and property lying and being situated in the City of Oxford, Lafayette County, State of Mississippi, more particularly described as follows, to-wit:

> Unit 201, in the Plan of Condominium of The Van Buren, a condominium as same is created, established and dedicated in a certain Plan of Condominium and Declaration of Covenants, Conditions and Restrictions for The Van Buren, executed by Van Buren Group, LLC, and of record in the office of the Chancery Clerk of Lafayette County, Mississippi, in Book 514 at Page 614, as supplemented by Supplement to The Plan of Condominium and Declaration of Covenants Conditions and Restrictions for The Van Buren recorded in Book 518 at Page 105.

IT IS AGREED AND UNDERSTOOD that the taxes for the current year have been prorated as of this date on an estimated basis, and when said taxes are actually determined, if the proration as of this date is incorrect, then the grantor agrees to pay to said grantees or their assigns any deficit on an actual proration.

This conveyance is the second phase of a like-kind exchange pursuant to and in compliance with §1031 of the Internal Revenue Code in which First American Exchange Corp. served as intermediary on behalf of the Grantee herein.

THIS CONVEYANCE and the warranty herein contained are subject to:

1. Any prior reservations or conveyances of all oil, gas and other minerals in, on or under the above described property of record, if any;

2. Electrical and gas lines on or adjacent to the west boundary running along 14th Street as shown on survey of Eubank & Moore Engineers, Inc., dated March, 28, 2001 as revised August 30, 2001.

1

**EXHIBIT**

tabbies®

" E "

3. The terms, conditions, restrictions, privileges, easements and obligations, including the right to create assessments, as contained in that certain Plan of Condominium and Declaration of Covenants, Conditions and Restrictions for The Van Buren, executed by Van Buren Group, LLC, on file and of record in the office of the Chancery Clerk of Lafayette County, Mississippi in Book 514 at Page 614, as supplemented by Supplement to The Plan of Condominium and Declaration of Covenants Conditions and Restrictions for The Van Buren recorded in Book 518 at Page 105.

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed by its duly authorized officer/representative on this the 20 day of December, 2003.

VAN BUREN GROUP, LLC

BY: *H. Claiborne Frazier*
H. Claiborne Frazier, Manager


STATE OF MISSISSIPPI

COUNTY OF HINDS

PERSONALLY appeared before me, the undersigned authority in and for the said county and state, on this the 20 day of December, 2003, within my jurisdiction, the within named H. Claiborne Frazier, who acknowledged that he is the Manager of Van Buren Group, LLC, a Mississippi manager-managed limited liability company and that for and on behalf of said company, and as its act and deed, he executed the foregoing instrument of writing after first having been duly authorized by said company so to do.

Notary Public

My Commission Expires:
December 7, 2006

Address & Phone of Grantor:            Address and Phone of Grantee:

5247 Greenway Drive                    3540 Hawthorn Dr.

2

Jackson, MS 39204
Home Phone: n/a
Business Phone: 60█████-5165

Jackson, MS 39216
Home Phone: 60█████████
Business Phone: N/A

Indexing Instructions:

Unit 201 of The Van Buren
City of Oxford, Lafayette County, Mississippi

Prepared By:

Taylor, Covington & Smith, P.A.
Post Office Box 3509
Jackson, MS 39207-3509
601/969-7817

3

STATE OF MISSISSIPPI
COUNTY OF LAFAYETTE

THIS INSTRUMENT WAS FILED FOR RECORD THIS 3l DAY OF December, 2003
AT 936 O'CLOCK A.M. AND RECORDED IN BOOK 521 PAGE 78 HIS 3l DAY
OF December, 2003.

BILL BLUNK, CHANCERY CLERK

BY: Beta Hill