# OPERATING AGREEMENT OF JACKSON METRO PROPERTIES, LLC, A MISSISSIPPI LIMITED LIABILITY COMPANY

THIS LIMITED LIABILITY COMPANY OPERATING AGREEMENT is entered into effective as of 28th day of April, 2003, by and between FRAZIER DEVELOPMENT, LLC, CLUB WOODLANDS LAND & TIMBER COMPANY, LLC AND CAPITAL CITY REALTY, LLC, as the Members pursuant to the provisions of the Mississippi Act as hereinafter defined. Whereas, the parties hereto desire to form a Mississippi Limited Liability Company to conduct business and for the purpose as set forth herein; and

WHEREAS, the undersigned parties desire to set forth all the rights, obligations, liabilities, and remedies of the parties of the operation of such limited liability company.

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, including the mutual covenants herein contained, the receipt and sufficiency are hereby acknowledged, the parties agree that JACKSON METRO PROPERTIES, LLC, a Mississippi limited liability company has been formed and will operate upon the following terms and conditions:

## ARTICLE 1
## DEFINITIONS

1.1    <u>Definitions</u>. The following terms used in this Operating Agreement shall have the following meanings (unless otherwise expressly provided herein):

a.    "Capital Account" as of any given date shall mean the Capital Contribution to the Company by a Member as adjusted up to the date in question pursuant to Article VIII.

b.    "Capital Contribution" shall mean any contribution to the capital of the Company in cash or property by a Member whenever made "Initial Capital Contribution" shall mean the initial contribution to the capital of the Company pursuant to this Operating Agreement.

c.    "Capital Interest" shall mean the proportion that a Member's positive Capital Account bears to the aggregate positive Capital Accounts of all Members whose Capital Accounts have positive balances as may be adjusted from time to time.

d.    "Certificate of Formation" shall mean the Certificate of Formation of JACKSON METRO PROPERTIES, LLC as filed with the Secretary of State of Mississippi as the same may be amended from time to time.

e.    "Company" shall refer to JACKSON METRO PROPERTIES, LLC.

f.    "Distribution Cash" means all cash, revenues, and funds received by the Company from Company operations, less the sum of the following to the extent paid or set aside by the Company: (i) All principal and interest payments on indebtedness of the Company and all other sums paid to lenders; (ii) All cash expenditures incurred incident to the normal operation of the Company's business; (iii) Such Reserves as the Members deem reasonably necessary to the proper operation of the Company's business.

g.    "Economic Interest" shall mean a Member's or Economic Interest Owner's share of one or more of the Company's Net Profits, Net Losses, and distributions of the Company's assets pursuant to this Operating Agreement and the Mississippi Act, but shall not include any right



EXHIBIT

A

to participate in the management or affairs of the Company, including the right to vote on, consent to, or otherwise participate in any decision of the Members.

h.   "Economic Interest Owner" shall mean the owner of an Economic Interest who is not a Member.

i.   "Entity" shall mean any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative or association, or any foreign trust, or foreign business organization.

j.   "Fiscal Year" shall mean the Company's fiscal year, which shall be the calendar year.

k.   "IRC" shall mean the Internal Revenue Code of 1986 or corresponding provisions of subsequent superseding federal revenue laws.

l.   "Gifting Member" shall mean any member or Economic Interest Owner who gifts, bequeaths, or otherwise transfers for no consideration (by operation of law or otherwise, except for bankruptcy) all or any part of its Membership Interest or Economic Interest.

m.   "Majority Interest" shall mean one or more Interests of Members which taken together exceed fifty percent (50%) of the aggregate of all Membership Interests.

n.   "Manager" shall mean Frazier Development, LLC, a Mississippi limited liability company, which company does hereby appoint Claiborne Frazier to represent it in all matters in its capacity as Manager under the terms of this Operating Agreement and all actions and decisions make are performed by him shall be binding upon the company and may be relied by any party dealing with this limited liability company without further investigation. The Managers shall have the authority to manage the business affairs of the Company. Each of the Managers shall serve until their replacement has been elected or appointed, as the case may be, as provided in Article V hereof.  References to the Manager in the singular or as him, her, it, itself, or other like references shall also, when the context so requires, be deemed to include the plural or the masculine or feminine reference, as the case may be.

o.   "Member" shall mean each of the parties who executes a counterpart of this Operating Agreement as a Member and each of the parties who may hereafter become Members. If a Person is a Member immediately before the purchase or other acquisition by such Person of an Economic Interest, that Person shall have all the rights of a Member with respect to the purchased or otherwise acquired Membership Interest or Economic Interest, as the case may be.

p.   "Membership Interest" shall mean a Member's entire interest in the Company including the Member's Economic Interest and the right to participate in the management of the business and affairs of the  Company, including the right to vote on, consent to, or otherwise participate in any decision or action of or by the Members granted pursuant to this Operating Agreement and the Mississippi Act.

q.   "Mississippi Act" shall mean the Mississippi Limited Liability Company  Act, Section 79-29-101 et seq. Mississippi Code of 1972, as amended.

r.   "Net Profits" and "Net Losses" shall mean the income, gain, loss, deductions, and credits of the Company in the aggregate or separately stated, as appropriate, determined in accordance

with accounting principles employed under the cash method of accounting at the close of each fiscal year on the Company's information tax return filed for federal income tax purposes.

s.      "Operating Agreement" shall mean this Operating Agreement as originally executed and as amended from time to time.

t.      "Persons" shall mean any individual or Entity, and the heirs, executors, administrators, legal representatives, successors, and assigns of the "Person" when the context so permits.

u.      "Reserves" shall mean, for any fiscal period, funds set aside or amounts allocated during such period to reserves that shall be maintained in amounts deemed sufficient by the Members for working capital and to pay taxes, insurance, debt service, or other costs or expenses incident to the ownership or operation of the Company's business.

v.      "Selling Member" shall mean any Member or Economic Interest Owner which sells, assigns, pledges, hypothecates or otherwise transfers for consideration all or any portion of its Membership Interest or Economic Interest.

w.      "Transferring Member" shall collectively mean a Selling Member and a Gifting Member.

x.      "Treasury Regulations" shall include proposed, temporary, and final regulations promulgated under the IRC in effect as of the date of filing the Certificate of Formation and the corresponding sections of any regulations subsequently issued that amend or supersede those regulations.

## ARTICLE II
## FORMATION OF COMPANY

2.1     Formation. On March 19, 2003, the Company was organized as a Mississippi Limited Liability Company by executing and delivering its Certificate of Formation to the Mississippi Secretary of State in accordance with and pursuant to the Mississippi Act.

2.2     Name. The name of the Company is JACKSON METRO PROPERTIES, LLC and all business shall be conducted under such name, and title to all property owned or leased to the Company shall be held in such name.

2.3     Principal Place of Business. The principal place of business of the Company within the State of Mississippi shall be 5247 A. Greenway Drive, Jackson, Mississippi 39204. The Company may locate its places of business and registered office at any other place or places as the Members may from time to time deem advisable.

2.4     Registered Office and Registration Agent. The Company's initial registered office shall be at the office of its registered agent at 5247 A. Greenway Drive, Jackson, Mississippi 39204, and the name of its initial registered agent at such address shall be Claiborne Frazier. The registered office and registered agent may be changed from time to time by filing the address of the new registered office and/or the name of the new registered agent with the Mississippi Secretary of State pursuant to the Mississippi Act.

2.5    Term. The term of the Company shall be from  April 28, 2003, until April 30, 2053, unless the Company is earlier dissolved in accordance with either the provisions of this Operating Agreement or the Mississippi Act.

2.6    Entity Classification Election.  The Company shall elect to be classified as a domestic eligible entity electing to be classified as a partnership for tax purposes and the Members agree to such and the Manager shall file Form 8832 with the Internal Revenue Service.

## ARTICLE III
## BUSINESS AND PROPERTY OF COMPANY

3.1    Permitted Businesses. The business of the Company shall be:

    a.    To accomplish any lawful business whatsoever, or which shall at any time appear conducive to or expedient for the protection or benefit of the Company and its assets as determined by its Members.

    b.    To exercise all other powers necessary to or reasonably connected with the Company's business that may be legally exercised by limited liability companies under the Mississippi Act.

    c.    To engage in all activities necessary, customary, convenient, or incident to any of the foregoing.

    d.    To purchase, own, develop, lease, manage and sell real property in the State of Mississippi and such personal property necessary for the operation and management of such real property.

    e.    To borrow money and issue evidences of indebtedness in furtherance of any and all of the objects of its business, to secure the same by mortgage, pledge or other lien and to execute notes or mortgages therefor.

3.2    Property.  All of the property of the Company, including real and personal property, shall be owned by and in the name of the Company.  The property and the credit of the Company shall be used solely for the benefit of the Company and not for the benefit of any individual Member, except as otherwise provided in this Operating Agreement.

## ARTICLE IV
## NAMES AND ADDRESSES OF MEMBERS

The names and addresses of the Members are as set forth on Exhibit A attached hereto and by reference made a part hereof.

## ARTICLE V
## MANAGEMENT OF THE COMPANY

4

5.1    <u>Management</u>. The business and affairs of the Company shall be managed by its Member Manager, Frazier Development, LLC. The Manager shall direct, manage, and control the business of the Company to the best of its ability. Except for situations in which the approval of the Members is expressly required by this Operating Agreement or by non-waivable provisions of applicable law, the Manager shall have full and complete authority, power, and discretion to manage and control the business, affairs, and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business.

5.2    <u>Number, Tenure, and Qualifications</u>. The Company shall initially have one (1) Manager. The number of Managers of the Company shall be fixed from time to time by the affirmative vote of Members holding at least *two-thirds* of all Membership Interests. The Manager shall hold office until his successor shall has been qualified, or until his death, or until he shall resign or shall have been removed. Any Manager may resign at any time by giving written notice of his resignation to the Members of the Company. Unless otherwise specified in the written notice, the resignation shall take effect upon receipt thereof by Members, and the acceptance of the resignation shall not be necessary to make it effective. Any elected Manager may be removed by the Members at any time, with or without cause, by the affirmative vote of two-thirds of the Members. Any removal shall be without prejudice to the contract rights, if any, of the person so removed.

5.3    <u>Certain Powers of Manager</u>. Without limiting the generality of Section 5.1 above, the Manager shall have power and authority, on behalf of the Company, to:

   a.    purchase liability and other insurance to protect the Company's Property and business;

   b.    invest any Company funds temporarily (by way of example but not limitation) in time deposits, short-term governmental obligations, commercial paper, or other investments;

   c.    employ accountants, legal counsel, managing agents, or other experts to perform services for the Company and to compensate them from Company funds and to retain such experts as the Manager deems appropriate for advise in the selection, maintenance and disposition of the Company's assets.

   d.    enter into any and all other agreements on behalf of the Company with any other person for any purpose, in such forms as the Manager may approve;

   e.    do and perform all other acts as may be necessary or appropriate to the conduct of the Company's business; and

   f.    execute on behalf of the Company, except as provided in Section 5.7, all instruments and documents, including, without limitation: checks; drafts; notes and other negotiable instruments; assignments; Bills of Sale; leases; and any other instruments or documents necessary, in the opinion of the Manager, to the business of the Company.

5.4    <u>Bank Accounts</u>. The Managers may from time to time open bank accounts in the name of the Company in such Banks and with such signatory thereon as determined by a majority of the Managers.

5.5     Indemnity of the Managers, Employees, and Other Agents. To the maximum extent permitted under Section 79-29-110 of the Mississippi Act, the Company shall indemnify the Manager and make advances for expenses for such reasonable expenses that are or may be necessary or appropriate to the conduct of the Company's business.

5.6     Salaries. The salaries and other compensation of the Managers shall be fixed from time to time by an affirmative vote of all of the Members, and no Manager shall be prevented from receiving that salary because the Manager is also a Member of the Company.

5.7     Approval of Members. Notwithstanding any other provisions in this Operating Agreement to the contrary, the affirmative vote of all of the Members shall be required to:

    a.     acquire, purchase and hold for resale any real property from or to any Person;

    b.     borrow money for the Company from banks, other lending institutions, the Manager, Members, or affiliates of the Manager or Members on such terms as the Manager deems appropriate, and in connection therewith, to hypothecate, encumber, and grant security interests in the assets of the Company to secure repayment of the borrowed sums. No debt shall be contracted or liability incurred by or on behalf of the Company except as approved by the Members.

    c.     sell or otherwise dispose of all or substantially all of the assets of the Company as part of a single transaction or plan so long as that disposition is not in violation of or a cause of a default under any other agreement to which the Company may be bound.

    d.     execute on behalf of the Company any mortgages, deeds of trust, security agreement, financing statements or other documents providing for the acquisition, mortgage or disposition of the Company's property; partnership agreements, Operating Agreements of other limited liability companies, and other instruments or documents related to the mortgage, conveyance or refinance of the Company's property or any part thereof..

5.8     Liability for Certain Acts. The Manager shall perform his managerial duties in good faith, in a manner he reasonably believes to be in the best interest of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. A Manager who so performs such duties shall not have any liability by reason of being or having been a Manager of the Company. A Manager does not, in any way, guarantee the return of the Members' capital contributions or a profit for the Members from the operations of the Company. A Manager shall not be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member, except for:

    a.     The amount of a financial benefit received by a Manager to which he is not entitled;

    b.     The amount of a loss or damage sustained by the Company or any Member as a result of an intentional infliction of harm, fraud, deceit, gross negligence, willful misconduct, wrongful taking, or intentional violations of criminal law by the Manager; and

    c.     The amount of distributions by the Company approved or assented to by the Manager that exceed what could have been distributed by the Company without violating the LLC Act.

## ARTICLE VI
## RIGHTS AND OBLIGATIONS OF MEMBERS

6.1     <u>Limitation of Liability</u>. Each Member's liability shall be limited as set forth in this Operating Agreement, the Mississippi Act, and other applicable law.

6.2     <u>Company Debt Liability</u>. A Member shall not be personally liable for any debts or losses of the Company beyond the Member's respective Capital Contributions and any obligation of the Member under Section 8.1 or 8.2 below to make Capital Contributions, except as provided in Section 6.7 below or as otherwise required by law.

6.3     <u>Company Books</u>. In accordance with Section 9.9 and/or 13.2 below, the Members shall maintain and preserve, during the term of the Company, and for five (5) years thereafter, all accounts, books, and other relevant Company documents. Upon reasonable request, each Member and Economic Interest Owner, their duly authorized respective agents or representatives, shall have the right, during ordinary business hours, to inspect and copy those Company documents at the requesting Member's and Economic Interest Owner's expense.

6.4     <u>Priority and Return of Capital</u>. Except as may be expressly provided in Article IX, no Member or Economic Interest Owner shall have priority over any other Member or Economic Interest Owner, either for the return of Capital Contributions or for Net Profits, Net Losses, or distributions; provided that this Section shall not apply to loans (as distinguished from Capital Contributions) which a Member has made to the Company.

6.5     <u>Liability of a Member to the Company</u>. A Member who rightfully receives the return in whole or in part of its contribution (as defined in Section 79-29-103 of the Mississippi Act) is nevertheless liable to the Company only to the extent now or hereafter provided by the Mississippi Act. A Member who receives a distribution made by the Company which is either in violation of this Operating Agreement, or made when the Company's liabilities exceed its assets (after giving effect to the distribution) is liable to the Company for a period of six years after the distribution for the amount of the distribution.

6.6     <u>Right of Non-Managing Members To Call For A Sale Of The Property</u>. Notwithstanding anything in this Operating Agreement to the contrary, the Non-Managing Members, at any time during the seventh year, the fifteenth year and every seventh year thereafter, shall have the right by the majority vote of the Non-Managing Members to require the Company to sell all of the real property owned by the Company as described on Exhibit "B" hereto, at a price established by and agreed to by all of the Members including the Manager. However, if the Members can not agree on a selling price for each of the properties, the Non-Managing Members shall obtain an appraisal by an appraiser qualified to make appraisals in the metropolitan area of Jackson, Mississippi, with at least ten (10) years experience and the Manager will obtain an appraisal from an appraiser having like qualifications. The Members shall make a determination of the selling price for each of the properties based on the two (2) appraisals. However, if the Members and the Manager can not agree on the purchase price for each of the properties, then they will retain a third appraiser having like qualifications, to make a determination as to the fair market value of the property based on the two (2) appraisals obtained by the Non-Managing Members and the Manager. Such determination by the third appraiser shall be binding on the Members.

Once the appraised price has been agreed upon or determined, then the Non-Managing Members shall give the Manager ninety (90) days written notice to purchase all or any one of the properties at the determined price for all or any of said property. The failure of the Manager to notify the Non-Managing Members of its desire to exercise this right of first refusal within said ninety (90) day period shall result in the termination of the right of first refusal and the Company shall offer said properties for sale at the agreed price to any third-party purchaser. However if the Manager does desire to purchase all or any of the Properties, the Manager will give the Non-Managing Members notice of its election and shall have the right to designate the time, date, and place of closing, provided that the date of closing shall be within thirty (30) days after receipt of written notification by the Non-Managing Members of said Manager's desire to purchase the Company's real property as described on Exhibit B, unless otherwise agreed

6.7   Preferential Return.   Club Woodland, LLC and Capital City Realty, LLC, have made contributions to the Company and are Members of the Company as indicated on Exhibit A hereto. The Company has agreed that said Members shall have a preferential return on their Capital Contributions equal to eleven percent (11%) per annum, until such time that the building, located on Tract 3 as described in Exhibit B hereto, is fully leased. The building situated on said Tract 3 has 15,000 square feet of unleased space, and until said space has been leased at a minimum rental of $8.00 per square foot, the aforesaid Members shall receive distributions equal to eleven percent (11%) per annum of their Capital Interest. All sums required or needed in excess of the normal distribution to Members as provided in this Agreement will be deducted from the normal distribution that would be made to the Manager to fund the said preferred distribution, until each of the above Members have received their respective eleven percent (11%) return on their Capital Interest. Once the 15,000 square feet of rental space has been leased as a minimum rental of eight dollars ($8.00) per square foot, Club Woodland, LLC and Capital City Realty, LLC shall receive the distributions on the same bases as the Manager and all other Members as state in Section 9.1 hereof and the preferential return as herein provided will be terminated and the provisions of this paragraph will be null and void and have no further affect.

6.8   Assignment of Life Insurance.   Frazier Development, LLC shall obtain a life insurance policy on the life or lives of its three (3) principals, C. E. Frazier, H. Claiborne Frazier and Austin Frazier, in sums equal to Five Hundred Thousand Dollars ($500,000.00) which policy or policies shall be assigned to this Company, the premium shall be paid and such policy or policies shall be kept current and in full force and effect until the outstanding unpaid principal balance of all mortgage loans, outstanding on the property described on Exhibit B for which said Frazier Development, LLC or said three (3) principals are individually liable for the payment of such loans are paid in full or until said properties have been refinanced with loans that do not require Frazier Development, LLC or all or any of the three (3) principals to be personally liable for the repayment of the indebtedness secured by said properties and that the only recourse is the said real properties and the improvements and leases thereon, except for such recourse obligations, which obligations and liabilities are customarily as follows: the amount of Lender's damage, loss, liability, costs and expenses, plus interest at the After-Maturity Rate (defined in the Note) under the Note and other Loan Documents, including any modifications, renewals and extensions thereof, which Lender may suffer (or become subject to) directly or indirectly arising out of, resulting from or based upon:

8

(a)    failure by Borrower or any Guarantor to perform the obligations contained in the Loan Documents (other than the obligations to make payments of principal, Payment Interest, prepayment fees or Premium due under the Note) to prevent waste, keep the Property free of any hazardous waste as required by any applicable governmental authority, maintain insurance coverage, pay over insurance and condemnation proceeds, and pay ad valorem taxes and assessments with respect to the Property,

(b)    fraud or misrepresentation by Borrower or any member of Borrower, or any Guarantor to Lender prior to or during the term of the Note,

(c)    misappropriation or conversion of any security for the Note,

(d)    collection of rents, issues or profits from the Property in contravention of the terms and provisions of the Loan Documents unless the same are applied to the Note,

(e)    failure by Borrower or any Guarantor to indemnify Lender under any environmental indemnification executed in favor of Lender, and

(f)    any act or omission of Borrower or any Principal resulting in a termination of or offset or reduction of rent under an anchor tenant lease ("anchor" being defined as any lease of more than twenty-five percent (25%) of the leaseable space in the Property, and any lease of 9,000 square feet (or more) of space in the Property).

6.9    <u>Refinance of Properties</u>.  The Manager has been advised that it will be able to secure non-recourse financing on a loan secured by the properties described in Exhibit B and the Manager will use its best efforts to  secure such financing and close a loan(s) on such properties within six months from the date hereof.

## ARTICLE VII
## MEETINGS OF MEMBERS

7.1    <u>Meetings of the Members.</u>

d.    The annual meeting of the Members shall be held on the second Thursday in April beginning with the year 2004, or at such time on such day as shall be fixed by the Managers, for the purpose of electing Members to serve as Managers and for transaction of such other business as may come before the meeting as stated in Section 5.2 .

e.    As provided in subsection (c) of this Section 7.1, special meetings of Members may be called by any Manager or by any two (2) Members or except as required by the Act.  All Member meetings shall be held at the Company office, unless designated otherwise by the Manager.

f.    The Company shall deliver or mail written notice stating the date, time, and place of any meeting of Members and, when otherwise required by law, a description of the purposes for

9

which the meeting is called, to each Member of record entitled to vote at the meeting, at the address as appears in the records of the Company, the notice to be mailed at least ten, but not more than sixty, days before the date and time of the meeting. A Member may waive notice of any meeting, before or after the date of the meeting, by delivering a signed waiver to the Company for inclusion in the minutes of the Company. A Member's attendance at any meeting, in person or by proxy (i) waives objection to lack of notice or defective notice of the meeting, unless the Member at the beginning of the meeting objects to holding the meeting or transacting business at the meeting, and (ii) waives objection to consideration of a particular matter at the meeting that is not within any purposes described in the meeting notice, unless the Member objects to considering the matter when it is presented.

g.      The record date for the purpose of determining the Members entitled to notice of a Members' meeting, for demanding a meeting, for voting, or for taking any other action shall be the tenth (10th) day prior to the date of the meeting or other action.

h.      A Member may appoint a proxy to vote or otherwise act for the Member pursuant to a written appointment form executed by the Member or the Member's duly authorized attorney-in-fact. An appointment of a proxy is effective when received by the Company. The general proxy of a fiduciary is given the same effect as the general proxy of any other Member. A proxy appointment is valid for eleven months unless otherwise expressly stated in the appointment form.

i.      Any or all Members may participate in any Members' meeting by, or through the use of, any means of communications by which all Members participating may simultaneously hear each other during the meeting. A Member so participating is deemed to be present in person at the meeting

7.2     Manner of Acting. If a quorum of two-thirds of all Membership Interest is represented, the affirmative vote of Members holding a Majority Interest shall be the act of the Members, unless the vote of a greater or lesser proportion or number is otherwise required by the Mississippi Act or by this Operating Agreement. Any member who is not an individual shall designate in writing an individual representative to vote at any meetings, execute consents, waivers or take any and all actions on behalf of such Member.

7.3     Action By Members Without a Meeting. Subject to the applicable laws of the State of Mississippi, any action required or permitted to be taken at a Members' meeting may be taken without a meeting if the action is taken by all of the Members entitled to vote on the action. The action must be evidenced by one or more written consents describing the action to be taken, signed by all the Members entitled to vote on the action, and delivered to the Company for inclusion in the minutes. The record date for determining Members entitled to take action without a meeting is the first date a Member signs the consent to the action.

7.4     Record of Meeting. At any Member's meeting the Members shall appoint a person to preside at the meeting and a person to act as secretary of the meeting. The secretary of the meeting shall prepare minutes of the meeting which shall be placed in the minute books of the Company.

7.5 Waiver of Notice. When any notice is required to be given to any Member, a waiver of the notice in writing signed by the person entitled to the notice, whether before, at, or after the time stated therein, shall be equivalent to the giving of the notice.

**ARTICLE VIII**

10

## CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS

8.1 <u>Capital Contribution</u>. Each member has contributed capital in cash or property to the Company in the aggregate amount set forth opposite each members' name in <u>Exhibit A</u>.

8.2 <u>Additional Contributions</u>. Except as set forth in Section 8.1 above, no Member shall be required to make any additional Capital Contributions. However, from time to time, the Members may be permitted to make additional Capital Contributions as are necessary or appropriate for the conduct of the Company's business, including without limitation, expansion or diversification, for any of the Company's obligations, expenses, costs, liabilities or expenditures. Upon any additional capital contribution to the Company, **Exhibit "A"** shall be revised accordingly to reflect the aggregate capital contributions of the Members. In such event, the Members shall have the opportunity (but not the obligation) to participate in such additional Capital Contributions on a pro rata basis in accordance with their Ownership Interests or in such other manner as the Members shall agree in writing. If less than all Members make Capital Contributions pursuant to this Section 8.2, the Members making such Capital Contributions shall have a proportionate increase in their Limited Liability Company Interest and the Members electing to not make such Capital Contributions shall have a proportionate decrease in their Limited Liability Company Interest. The proportionate increase or decrease, as the case may be, shall be based upon the fair market value of the Company, which shall be determined in good faith by the Company's Certified Public Accountant.

8.3 <u>Capital Accounts</u>. A separate Capital Account will be maintained for each Member.

    a. The manner in which Capital Accounts are to be maintained pursuant to this Section 8.3 is intended to comply with the requirements of IRC § 704(b) and the Treasury Regulations promulgated thereunder. If in the opinion of the Company's accountants the manner in which Capital Accounts are to be maintained pursuant to the preceding provisions of this Section 8.3 should be modified to comply with IRC § 704(b) and the Treasury Regulations thereunder, then notwithstanding anything to the contrary contained in the preceding provisions of this Section 8.3, the method in which Capital Accounts are maintained shall be so modified; provided, however, that any change in the manner of maintaining Capital Accounts shall not materially alter the economic agreement between or among the Members.

    b. Frazier Development, LLC, is hereby designated as the Tax Matters Member. Any notice, correspondence, communications, etc, received by the Tax Matter Member shall be immediately distributed to all Members. All decisions concerning tax matters will be made by the Managers and implemented by the Tax Matters Member.

## ARTICLE IX
## ALLOCATION, INCOME TAX, DISTRIBUTIONS, ELECTIONS, AND REPORTS

9.1 <u>Allocation</u>. Except as may be required by Section 704 (c) of the Internal Revenue Code and Treasury Regulation 1.704-1(b)(2)(iv)(f), the net profits or the net losses (and any separately stated items, including without limitation, depreciation, amortization and tax credits) of the Company shall be allocated to the Members, pro rata in accordance with their Membership Interests in the Company as stated in Section 8.1 hereof.

All items of income, gain, loss, deduction, and credit available to any Membership Interest or Economic Interest that may have been transferred shall be allocated between the transferor and the transferee based on the portion of the calender year during which each was recognized as owning that Membership Interest or Economic Interest, without regard to the results of Company operations during any particular portion of that calender year and without regard to whether cash distributions were made to the transferee during that calendar year; provided, however that this allocation must be made in accordance with a method permissible under Section 706 of the Internal Revenue Code and the regulations thereunder.

9.2    Qualified Income offset and Minimum Gain Chargeback Provisions.

(a)    The Code and Treasury Regulations contain certain economic sharing requirements in order for income tax allocations among the Members or Economic Interest Owners to be respected for tax purposes. In general, such requirements are designed to eliminate the allocation of tax losses which have no economic effect to the Members and Economic Interest Owners. In order to comply with such requirements, this Section 9.2 requires that the qualified income offset and minimum gain chargeback provisions provided for in Treas. Reg. Sections 1.704-1 and 1.704.2 be followed, as presently in effect and as hereinafter amended. Such provisions are not expected to alter the allocations described in Section 9.1 except in unusual and unforseen circumstances.

(b)    If a special allocation of an item of net profit or net loss is made to a Member or Economic Interest Owner under this Section 9.2, future allocations of profit and loss shall be adjusted to take into account such special allocations.

9.3    From time to time the Members may determine the amount of cash available for distributions and may distribute such amount thereof as they deem appropriate. Except as provided in Section 6.7, any distributions shall be made pro rata to the Members in accordance with their Membership Interests in the Company. Any declared but unpaid distribution will constitute a liability of the Company to a Member. The Members may also cause property of the Company other than cash to be distributed to the Members or Economic Interest Owners, which distribution must be made in accordance with their Membership Interest in the Company, and may be subject to existing liabilities and obligations. Immediately prior to such distribution of property other than cash, the capital accounts of the Members and Economic Interest Owners shall be adjusted as provided in Treasury Regulation 1.704-1(b)(2)(iv)(f). However, no distribution shall be declared and paid which would violate Section 79-29-605 of the Mississippi Code of 1972, as amended.

9.4    State Tax Withholding. The Company is specifically authorized, at its discretion, to withhold from distributions to each Member an amount equal to five percent (5%) of the Net Profits of the Company for each fiscal year and to remit such withheld amount to the Mississippi State Tax Commission, in accordance with the provisions of Section 27-7-25 of the Mississippi Code of 1972, as amended, which shall be deemed to be payments of estimated Mississippi Income Tax of the Members and shall be allocated to each Member's taxpayer account set up and maintained by the Mississippi State Tax Commission based on the manner or method such payments would otherwise have been distributed to the Members.

9.5    Accounting Principles. The profits and losses of the Company shall be determined in accordance with generally accepted accounting principles applied on a consistent basis using the cash method of accounting. It is intended that the Company will elect those accounting methods that provide the Company with the greatest tax benefits.

9.6     Interest on and Return of Capital Contributions. No Member shall be entitled to interest on its Capital Contribution or to return of its Capital Contribution, except as otherwise specifically provided for in this Operating Agreement.

9.7     Loans to Company.   Nothing in this Operating Agreement shall prevent any Member from making secured or unsecured loans to the Company by agreement with the Managers.

9.8     Accounting Period. The Company's accounting period shall be the calendar year.

9.9     Records, Audits, and Reports. At the expense of the Company, the Members shall maintain records and accounts of all operations and expenditures of the Company. At a minimum the Company shall keep at its principal place of business the following records:

   a.     A current list of the full name and last known business, residence, or mailing address of each Member, Economic Interest Owner, both past and present;

   b.     A copy of the Certificate of Formation of the Company and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any amendment has been executed;

   c.     Copies of the Company's federal, state, and local income tax returns and reports, if any, for the four most recent years;

   d.     Copies of the Company's currently effective written Operating Agreement, copies of any writings permitted or required with respect to a Member's obligation to contribute cash, property, or services, and copies of any financial statements of the Company for the three most recent years;

   e.     Minutes of meetings and notice of waivers;

   f.     Any written consents obtained from Members for actions taken by Members without a meeting.

9.10    Returns and Other Elections. The Members shall cause the preparation and timely filing of all tax returns required to be filed by the Company pursuant to the IRC and all other tax returns deemed necessary and required in each jurisdiction in which the Company does business. Copies of those returns, or pertinent information from the returns, shall be furnished to the Members within a reasonable time after the end of the Company's fiscal year. All elections permitted to be made by the Company under federal or state laws shall be made by the Member or Members owning a Majority Interest.

**ARTICLE X**
**TRANSFERABILITY**

10.1    General. Except as otherwise specifically provided in this Operating Agreement and section 10.2 below, neither a Member nor an Economic Interest Owner shall have the right to:

   a.     Sell, assign, pledge, hypothecate, transfer, exchange or otherwise transfer for consideration, (collectively, "sell") all or any part of its Membership Interest;

13

b.     Sell, assign, pledge, hypothecate, transfer, exchange or otherwise transfer for consideration, all or any part of its Economic Interest without the unanimous written consent of the remaining members;

c.     Gift, bequeath or otherwise transfer for no consideration (whether or not by operation of law, except in the case of bankruptcy) all or part of its Membership Interest or Economic Interest."

d.     Notwithstanding any other provision in this ARTICLE X to the contrary, a Member may transfer or dispose of all or part of his or its Limited Liability Company Interest by gift or sale to a Member of the transferor's Immediate Family, or to a corporation, limited liability company, limited partnership, limited liability partnership, or such other entity or to a trust for the primary benefit of some or all of the Transferor's Immediate Family. For purposes of this Operating Agreement, "Immediate Family" is defined as a child, grandchild, parent, grandparent or sibling of the Transferor Member, as well as any lineal descendant or ancestor of the Transferor Member but does not include any spouse of any lineal descendant or ancestor of the Transferor Member.

10.02    Buyout Right. At any time a Member so desires, such Member (the "Offering Member") may, by written notice to the other Members (the "Offeree Members") by certified mail, return receipt requested, offer to sell the Offering Member's entire Membership Interest (the "Offered Interest") for cash at a price determined as hereinafter set forth (the "Purchase Price"), which shall constitute the grant to the Offeree Members of an irrevocable option to purchase such interest on the terms set forth herein (the "Option"). Upon receipt of such notice, each such Offeree Member shall, on a basis pro rata to their Membership Interest  or on a basis pro rata to the Membership Interest of those Offeree Members exercising their right to purchase all (but not less than all) of the Offered Interest, give written notice thereof within ten (10) days of receipt of the such notice, and the parties shall proceed to determine the Purchase Price. The Purchase Price shall be the fair market value of the Offered Interest determined by a qualified appraiser chosen jointly by the Offeree Member(s) and Offering Member and the fair market value so determined  shall be binding on all of the parties to this Agreement.

If the Offeree Member(s) and Offering Member are unable to agree upon an appraiser, each shall select a qualified appraiser within ten (10) days of the Offeree Member's notice of intent to proceed, and the two appraisers so selected shall forthwith select a third qualified appraiser.  The three appraisers (or a majority thereof if their decision is not unanimous) shall jointly determine the fair market value of the Offered Interest in accordance with the considerations set forth in the preceding paragraph, and such determination shall be binding on the parties.  The decision of the appraiser(s) shall be rendered in writing within fifteen days of selection of the appraiser or, in the case of three appraisers, from the date on which the third and final appraiser is selected.  The cost of the appraisal process set forth above shall be borne equally by the buying and selling parties if only one appraiser is utilized.  If three appraisers are utilized, each party shall pay the cost of the appraisal rendered by its appraiser and one-half of the cost of the third appraisal. .

For purposes of this Agreement, an appraiser shall be deemed competent and qualified if he or she has at least ten (10) years experience as an investment banker, certified public accountant or other similarly situated professional with experience in appraising and valuing businesses.

The Offeree Member(s) shall have twenty (20) days from receipt of the final determination of the Purchase Price (the "Option Period") in which they may, in their sole and individual discretion: (a)

elect to exercise the Option by written notice to the Offering Member; or (b) assign its Option to a third party chosen by the Offeree Member(s), which third party may proceed to exercise the Option by written notice to the Offering Member within the Option Period. The sale of the Offered Interest shall be closed within fifteen days of the expiration of the Option Period. If the Offeree Member(s) or the third party assignee elects to exercise the Option, the Offering Member shall have thirty (30) days from expiration of the Option Period in which it may sell the Offered Interest to a third party notwithstanding the restriction of Article X, provided that the purchase price paid by any such third party shall not be less than the fair market value determined by the appraisal process set forth above. If the Offering Member does not sell the Offered Interest within such thirty (30) day period, the restrictions of Article X shall again apply to the Offered Interest.

## ARTICLE XI
## ADDITIONAL MEMBERS

11.1    <u>Admission to Membership</u>. From the date of the formation of the Company, any Person or Entity acceptable to the Members by their unanimous vote may become a Member in this Company either by the issuance by the Company of Membership Interests for such consideration as the Members by their unanimous votes shall determine, or as a transferee of a Member's Membership Interest or any portion thereof, subject to the terms and conditions of this Operating Agreement.

11.2    <u>Financial Adjustments</u>. No new Members shall be entitled to any retroactive allocation of losses, income, or expense deductions incurred by the Company. The Members may, at their option, at the time a Member is admitted, close the Company books (as though the Company's tax year had ended) or make pro rata allocations of loss, income, and expense deductions to a new Member for that portion of the Company's tax year in which a Member was admitted in accordance with the provisions of IRC § 706(d) and the Treasury Regulations promulgated thereunder.

## ARTICLE XII
## DISSOLUTION AND TERMINATION

12.1    <u>Dissolution</u>.

a.    The Company shall be dissolved upon the occurrence of any of three events:(i) When the period fixed for the duration of the Company shall expire pursuant to Section 2.05 above;(ii) By the unanimous written agreement of all Members; or (iii) Upon the death, retirement, resignation, expulsion, bankruptcy, or dissolution of a Member or occurrence of any other event which terminates the continued membership of a Member in the Company (a "Withdrawal Event"), unless the business of the Company is continued by the consent of all the remaining Members within 90 days after the Withdrawal Event and there are at least two remaining Members. Each of the Members hereby agrees that within the 60 days after the occurrence of a Withdrawal Event (and provided that there are then at least two remaining Members of the Company), they will promptly consent, in writing, to continue the business of the Company. Each of the Members further agrees promptly to consent, in writing, to continue the business of the Company upon a sale or gift either of a Member's entire Economic Interest to which all of the remaining Members do not consent within 45 days after the occurrence of such a sale or gift or upon a sale or gift of a Transferring Member's entire Membership Interest. The consents shall be mailed or hand delivered to the principal place of business of the Company set forth in Section 2.3 above (or to such other address designated by the Members) no later than 80 days after each Withdrawal Event or transfer by a Member of its entire Economic Interest or Membership Interest. The sole remedy for

15

breach of a Member's obligation to consent to continue the business of the Company under this Section shall be money damages (and not specific performance).

b.     As soon as possible following the occurrence of any of the events specified in this Section 12.1 effecting the dissolution of the Company, the appropriate representative of the Company shall execute a statement of intent to dissolve in such form as shall be prescribed by the Mississippi Secretary of State and file same with the Mississippi Secretary of State's office.

c.     If a Member who is an individual dies or a court of competent jurisdiction adjudges him to be incompetent to manage the Member's person or property, the Member's executor, administrator, guardian, conservator, or other legal representative may exercise all of the Member's rights for the purpose of settling the Member's estate or administering his property.

d.     Except as expressly permitted in this Operating Agreement, a Member shall not voluntarily resign or take any other voluntary action that directly causes a Withdrawal Event. Unless otherwise approved by Members owning a Majority Interest, a Member who resigns (a "Resigning Member") or whose Membership Interest is otherwise terminated by virtue of a Withdrawal Event, regardless of whether the Withdrawal Event was the result of a voluntary act by the Member, shall not be entitled to receive any distributions to which the Member would not have been entitled had the Member remained a Member. Except as otherwise expressly provided in this Operating Agreement, a Resigning Member shall become an Economic Interest Owner. Damages for breach of this Section 12.1(e) shall be monetary damages only (and not specific performance), and the damages may be offset against distributions by the Company to which the Resigning Member would otherwise be entitled.

12.2     <u>Effect of Filing of Dissolving Statement</u>. Upon the filing by the Mississippi Secretary of State of a statement of intent to dissolve, the Company shall cease to carry on its business, except insofar as may be necessary for the winding up of its business, but its separate existence shall continue until a certificate of dissolution has been issued by the Secretary of State or until a decree dissolving the Company has been entered by a court of competent jurisdiction.

12.3     <u>Winding Up, Liquidation, and Distribution of Assets</u>. Upon dissolution, an accounting shall be made by the Company's independent accountants of the accounts of the Company and of the Company's assets, liabilities, and operations, from the date of the last previous accounting until the date of dissolution. The Members shall immediately proceed to wind up the affairs of the Company. If the Company is dissolved and its affairs are to be wound up, the Members shall:

a.     Sell or otherwise liquidate all of the Company's assets as promptly as practicable (except to the extent the Member(s) may determine to distribute any assets to the Members in kind);

b.     Allocate any profit or loss resulting from such sales to the Members' and Economic Interest Owners' Capital Accounts in accordance with Article IX above;

c.     Discharge all liabilities of the Company, including liabilities to Members and Economic Interest Owners who are creditors, to the extent otherwise permitted by law, other than liabilities to Members and Economic Interest Owners for distributions, and establish such Reserves as may be reasonably necessary to provide for contingencies or liabilities of the Company (for purposes of determining the Capital Accounts of the Members and Economic

16

Interest Owners, the amounts of such Reserves shall be deemed to be an expense of the Company);

d.    Distribute the remaining assets in the following order: (i) If any assets of the Company are to be distributed in kind, the net fair market value of those assets as of the date of dissolution shall be determined by independent appraisal or by the vote of the Managers as stated in Section 5.1 above. Those assets shall be deemed to have been sold as of the date of dissolution for their fair market value, and the Capital Accounts of the Members and Economic Interest Owners shall be adjusted pursuant to the provisions of Article IX and Section 8.3 of this Operating Agreement to reflect such deemed sale. (ii) The positive balance (if any) of each Member's and Economic Interest Owners's Capital Account (as determined after taking into account all Capital Account adjustments for the Company's taxable year during which the liquidation occurs) shall be distributed to the Members, either in cash or in kind, as determined by the Members, with any assets distributed in kind being valued for this purpose at their fair market value as determined pursuant to Section 12.3(d)(i). Any such distributions to the Members in respect of their Capital Accounts shall be made in accordance with the time requirements set forth in Treas. Reg. § 1.704-1(b)(2)(ii)(b)(2).

e.    Notwithstanding anything to the contrary in this Operating Agreement, upon a liquidation within the meaning of Treas. Reg. § 1.704-1(b)(2)(ii)(g) and Section 9.2 above, if any Member has a Deficit Capital Account (after giving effect to all contributions, distributions, allocations, and other Capital Account adjustments for all taxable years, including the year during which such liquidation occurs), the Member shall have no obligation to make any Capital Contribution, and the negative balance of the Member's Capital Account shall not be considered a debt owed by the Member to the Company or to any other Person for any purpose whatsoever.

f.    Upon completion of the winding up, liquidation, and distribution of the assets, the Company shall be deemed terminated.

g.    The Members shall comply with any applicable requirements of applicable law pertaining to the winding up of the affairs of the Company and the final distribution of its assets.

12.4    Articles of Dissolution. When all debts, liabilities, and obligations have been paid and discharged or adequate provisions have been made therefor and all of the remaining property and assets have been distributed to the Members, articles of dissolution shall be executed in duplicate and verified by the person signing the articles, which articles shall set forth the information required by the Mississippi Act. Duplicate originals of the articles of dissolution shall be delivered to the Mississippi Secretary of State.

12.5    Certificate of Dissolution. Upon the issuance of the certificate of dissolution, the existence of the Company shall cease, except for the purpose of suits, other proceedings, and appropriate action as provided in the Mississippi Act. Either Member shall have authority to distribute any Company property discovered after dissolution, convey real estate, and take such other action as may be necessary on behalf of and in the name of the Company.

12.6    Return of Contribution Nonrecourse to Other Members. Except as provided by law or as expressly provided in this Operating Agreement, upon dissolution, each Member shall look solely to the assets of the Company for the return of its Capital Contribution. If the Company property remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the cash

17

contribution of one or more Members, the Members shall have no recourse against any other Member.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1 <u>Notices</u>. Any notice, demand, or communication required or permitted to be given by any provision of this Operating Agreement shall be deemed to have been sufficiently given or served for all purposes if delivered personally to the party or to an executive officer of the party to whom the same is directed or, if sent by registered or certified mail, postage and charges prepaid, addressed to the Member's and/or Company's address, as appropriate, which is set forth on Exhibit "A" to this Operating Agreement, or to such other address as any party may designate by notice complying with the terms hereof. Except as otherwise provided in this Operating Agreement, any such notice shall be deemed to be given three business days after the date on which the same was deposited in a regularly maintained receptacle for the deposit of United States mail, addressed and sent as aforesaid.

13.2 <u>Books of Accounts and Records</u>. Proper and complete records and books of account shall be kept or shall be caused to be kept by the Members in which shall be entered fully and accurately all transactions and other matters relating to the Company's business in the detail and completeness customary and usual for businesses of the type engaged in by the Company. The books and records shall be maintained as provided in Sections 6.4 and 9.9 above. The books and records shall at all times be maintained at the principal executive office of the Company and shall be open to the reasonable inspection and examination of the Members, Economic Interest Owners, or their duly authorized representatives during reasonable business hours.

13.3 <u>Application of Mississippi Law</u>. This Operating Agreement, and the application of interpretation hereof, shall be governed exclusively by its terms and by the laws of the State of Mississippi and specifically the Mississippi Act.

13.4 <u>Waiver of Action for Partition</u>. Each Member and Economic Interest Owner irrevocably waives during the term of the Company any right that it may have to maintain any action for partition with respect to the property of the Company.

13.5 <u>Amendments</u>. This Operating Agreement may not be amended except by the unanimous written agreement of all of the Members.

13.6 <u>Execution of Additional Instruments</u>. Each Member hereby agrees to execute such other and further statements of interest and holdings, designations, powers of attorney, and other instruments necessary to comply with any laws, rules, or regulations.

13.7 <u>Construction</u>. Whenever the singular number is used in this Operating Agreement and when required by the context, the same shall include the plural and vice versa, and the masculine gender shall include the feminine and neuter genders and vice versa.

13.8 <u>Headings</u>. The headings in this Operating Agreement are for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Operating Agreement or any of its provisions.

13.9 <u>Waivers</u>. The failure of any party to seek redress for violation of or to insist upon the strict performance of any covenant or condition of this Operating Agreement shall not prevent a

18

subsequent act, that would have originally constituted a violation, from having the effect of an original violation.

13.10    Rights and Remedies Cumulative. The rights and remedies provided by this Operating Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive the right to use any or all other remedies. Said rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance, or otherwise.

13.11    Severability. If any provision of this Operating Agreement or its application to any person or circumstance shall be invalid, illegal, or unenforceable to any extent, the remainder of this Operating Agreement and its application shall not be affected and shall be enforceable to the fullest extent permitted by law.

13.12    Heirs, Successors, and Assigns. Each and all of the covenants, terms, provisions, and agreements contained in this Operating Agreement shall be binding upon and inure to the benefit of the parties hereto and, to the extent permitted by this Operating Agreement, their respective heirs, legal representatives, successors, and assigns.

13.13    Creditors. None of the provisions of this Operating Agreement shall be for the benefit of or enforceable by any creditors of the Company.

13.14    Counterparts. This Operating Agreement may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

# CERTIFICATE

The undersigned hereby agree, acknowledge, and certify that the foregoing Operating Agreement constitutes the Operating Agreement of JACKSON METRO PROPERTIES, LLC adopted by the Members of the Company effective as of the date first written above.

**MEMBERS:**

FRAZIER DEVELOPMENT, LLC

By: _Claiborne Frazier_

    Claiborne Frazier, Member

CLUB WOODLANDS LAND & TIMBER COMPANY, LLC

By: _____

    Shelby Brantley

CAPITAL CITY REALTY, LLC

By: _____

    Carroll M. McLeod, Member

By: _____

    Lorie B. McLeod, Member

## EXHIBIT A

### CAPITAL CONTRIBUTIONS AND MEMBERSHIP INTEREST

| Name and Address | Membership Interest |
|---|---|
| Frazier Development, LLC<br>5247 A. Greenway Drive<br>Jackson, MS 39204 | 75.00% |
| Club Woodland, LLC<br>c/o Shelby K. Brantley, Jr., M.D.<br>132 Hawthorne Vale<br>Ridgeland, MS 39157 | 16.67% |
| Capital City Realty, LLC<br>c/o Carroll M. McLeod, Member<br>115 Winged Foot Circle<br>Jackson, MS 39211 | 8.33% |

## EXHIBIT B

LEGAL DESCRIPTION

## AMENDMENT TO OPERATING AGREEMENT OF JACKSON METRO PROPERTIES, LLC, A MISSISSIPPI LIMITED LIABILITY COMPANY

WHEREAS, JACKSON METRO PROPERTIES, LLC ("the Company"), a Mississippi limited liability company, was formed on March 19, 2003 by delivering its Certificate of Formation duly executed, to the Mississippi Secretary of State in accordance and pursuant to the Mississippi Act; and

WHEREAS, Frazier Development, LLC, Club Woodlands Land & Timber Company, LLC and Capital City Realty, LLC, as the sole and only members of the Company adopted a Limited Liability Agreement (the "Operating Agreement") effective as of April 28, 2003; and

WHEREAS, Frazier Development, LLC, under the provisions of Article X of the Operating Agreement, desires to transfer, set over and assign unto R. Scott Hines a 5.31% Membership Interest in the Company, unto E. R. Hines, Jr. a 4.87% Membership Interest in the Company and unto Shirley M. Hines a 2.21% Membership Interest in the Company leave leave Frazier Development, LLC with a 62.20% Membership Interest in the Company; and

WHEREAS, Club Woodlands Land & Timber Company, LLC and Capital City Realty, LLC, the only other members of the Company, consent to and agree to such transfer and to admitting R. Scott Hines, E. R. Hines, Jr. and Shirley M. Hines as members of the Company.

NOW THEREFORE, IN CONSIDERATION OF THE PREMISES, and other good and valuable consideration, the receipt and sufficiency of all of which are hereby acknowledged, the members of the Company do hereby admit R. Scott Hines, E. R. Hines, Jr. and Shirley M. Hines as Members to the Company and do hereby amend the Operating Agreement as follows:

1.    Exhibit "A" to the Operating Agreement is hereby deleted and the Exhibit "A" attached hereto and by reference made a part hereof is hereby substituted in lieu and in place thereof and all references to Exhibit "A" in Article IV, Article VIII, or

elsewhere in the Operating Agreement shall, after the effective date hereof, mean and refer to the Exhibit "A" attached to this Amendment.

Except as herein above amended, the Operating Agreement remains in full force and effect, unchanged and unaltered.

R. Scott Hines, E. R. Hines, Jr. and Shirley M. Hines hereby acknowledge that they have read and are familiar with the Operating Agreement of the Company and do hereby consent to becoming members of the Company subject to all of the terms and conditions of the Operating Agreement as herein above amended.

IN WITNESS WHEREOF, the undersigned hereby adopt the above and foregoing Amendment effective as of the 1st day of January, 2004, and acknowledge that the Company shall continue to operate pursuant to the Operating Agreement as herein amended.

EXECUTED, to be effective as of this the 1st day of January, 2004.

**MEMBERS:**

FRAZIER DEVELOPMENT, LLC

By: _____
    Claiborne Frazier, Member

CLUB WOODLANDS LAND & TIMBER
COMPANY, LLC

By: _____
    Shelby Brantley

CAPITAL CITY REALTY, LLC

By: _____
    Carroll M. McLeod, Member

By: _____
    Lorie B. McLeod, Member

-2-

INCOMING MEMBERS:

_____
R. SCOTT HINES

_____
E. R. HINES, JR

_____
SHIRLEY M. HINES

-3-

EXHIBIT "A"

| MEMBERS NAME AND ADDRESS | OWNERSHIP INTEREST |
|---|---|
| Frazier Development, LLC 204 Country Place Parkway Pearl, Mississippi 39208 | 62.61% |
| Club Woodland, LLC c/o Shelby K. Brantley, Jr., M.D. 132 Hawthorne Vale Ridgeland, MS 39157 | 16.67% |
| Capital City Realty, LLC c/o Carroll M. McLeod, Member 115 Winged Foot Circle Jackson, MS 39211 | 8.33% |
| R. Scott Hines P. O. Box 3216 Ridgeland, Mississippi 39158 | 5.31% |
| E. R. Hines, Jr. P. O. Box 3216 Ridgeland, Mississippi 39158 | 4.87% |
| Shirley M. Hines P. O. Box 3216 Ridgeland, Mississippi 39158 | 2.21% |

U:Betty:Covington:DOC-FRAZIER:JACKSON METRO PROPERTIES:Amendment to Operating Agmt.wpd

-4-